Richard E. COFFIN, Appellant,

v.

POLISHING MACHINES, INC., John A. Tricoli, Jr., Helen Tricoli, and Nicholas Daniels, Appellees.

No. 77–2360.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1979.

Decided April 25, 1979.

Stuart W. Settle, Richmond, Va. (John C. Moore, Coates, Comess, Settle, Moore & Taylor, Richmond, Va., on brief), for appellant.

Michael S. Shelton, Richmond, Va. (W.H.C. Venable, Cohen, Abeloff & Staples, P.C., Richmond, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BUTZNER and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

Richard E. Coffin sued in the district court to recover compensatory and punitive damages for misrepresentations allegedly made to him in connection with his purchase of stock in Polishing Machines Systems, Inc. The district court dismissed the action for lack of federal jurisdiction and for failure to state a claim upon which relief could be granted. We reverse and remand.

I

Coffin's complaint alleges the following facts. Polishing Machines is a Virginia corporation that sells commercial car waxing and polishing equipment. John Tricoli, president of the company, visited Coffin's New York service station late in 1975 in order to interest Coffin in the company's products. As a result of the visit, Coffin became an area distributor for the company. Tricoli then gave Coffin a copy of a report describing the company and encouraged him to consider purchasing stock that the company wanted to sell in order to finance expansion. After negotiations in Virginia and New York, the parties reached an agreement. Their written contract provided that Coffin would buy half of the outstanding shares in Polishing Machines, sell his service station, move to Virginia, and devote his full time to duties as executive vice president of the corporation. Pursuant to the contract, Coffin sold his business and began work at Polishing Machines in May, 1976. The stock that he purchased had all of the attributes of ordinary common stock.

After gaining access to the company's books, Coffin learned that representations made to him in the report and during the negotiations were materially false and misleading. Specifically, he discovered that Tricoli had converted corporate assets to his own use and left Polishing Machines insolvent. Coffin then brought this action in the district court to recover damages under the federal securities acts, the Virginia blue sky statute, and the common law of fraud.

The district court granted motions under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), dismissing the case on its pleadings. The court relied on *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), for the proposition that not every sale of stock falls within the coverage of the federal securities statutes. It then reasoned that even ordinary corporate stocks are not securities within the meaning of the federal statutes unless they "represent an interest in an enterprise from which the investor seeks to derive a profit *solely from the work of others* . . . ." *See SEC v. Howey Co.,* 328 U.S. 293, 298, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Since Coffin was to contribute substantially to the management of Polishing Machines, the court held that the substance of the transaction in this case was the sale of a half interest in a business even though the transfer took the form of a sale of stock.

## II

■ We do not believe that *Forman* denies a purchaser of ordinary corporate stock the protection of the federal securities laws simply because he intends to participate in the management of the corporation in which he invests. Both the Securities Act of 1933, 15 U.S.C. § 77b(1), and the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), include "stock" within their definitions of a "security." Thus, when a transaction involves stock, there is a strong presumption that the statutes apply. *Occidental Life Insurance Co. v. Pat Ryan & Associates, Inc.,* 496 F.2d 1255, 1261 (4th Cir. 1974). *Forman* requires us to analyze the substance of a transaction only when the stocks involved do not have the "significant characteristics typically associated with the named instrument." *See Forman,* 421 U.S. 837, 850–51, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621.

■ Absent some showing that ordinary corporate stocks are other than what they appear to be, we need not consider whether an investor will derive his profit partly from his own efforts. That test, drawn from *SEC v. Howey Co.,* 328 U.S. 293, 298, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), applies to interests not easily recognized as securities in the capital market. It does not apply to stock that comes within the clear language of the securities acts. The court in *Forman,* for example, applied the *Howey* test only after deciding that the shares under consideration were not like ordinary capital stock. *See Forman,* 421 U.S. 837, 850–53, 95 S.Ct. 2051, 44 L.Ed.2d 621; *Bronstein v. Bronstein,* 407 F.Supp. 925, 929–30 (E.D.Pa.1976).

■ When ordinary corporate stock is involved in a transaction, we likewise need not consider whether the parties could have structured their arrangement in some other form. The parties in this case chose to implement their plan for joint ownership by means of a stock transfer rather than a partnership agreement or a sale of assets. Having decided to deal in stock, they brought their transaction under the provisions of the federal securities statutes. *Occidental Life Insurance Co. v. Pat Ryan & Associates, Inc.,* 496 F.2d 1255, 1263 (4th Cir. 1974). Indeed, the descriptive report supplied to Coffin during the negotiations indicates that Polishing Machines wanted to sell stock in order to finance corporate expansion. Thus, the transaction appears to be the very sort of transfer with which the federal securities laws are most concerned, "the sale of securities to raise capital for profit-making purposes." *Forman,* 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621.

We therefore conclude that Coffin has alleged a cause of action under the federal securities acts. Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**