Robert A. KING, Richard J. King, North Ga. Mechanical Co., and North Ga. Mobile Homes Supply, Inc., Plaintiffs-Appellants,

v.

Clenn WINKLER and William R. Harris, Jr., Defendants-Appellees.

No. 80–7994.

United States Court of Appeals, Eleventh Circuit.

April 12, 1982.

T. Kennerly Carroll, Atlanta, Ga., for plaintiffs-appellants.

Kilpatrick & Cody, Thomas C. Harney, Atlanta, Ga., for Winkler.

David W. Drake, Somers & Altenbach, Fred L. Somers, Jr., John W. Gibson, Atlanta, Ga., for Harris.

Before RONEY and FAY, Circuit Judges, and EDENFIELD *, District Judge.

---

\* The Honorable Newell Edenfield, United States District Judge for the Northern District of Georgia, sitting by designation. This case is

**RONEY, Circuit Judge:**

This appeal raises an unsettled issue of federal securities law: whether a transaction involving a private sale of all of a sole shareholder's corporate stock to purchasers who intend to personally operate and manage the business is a security transaction controlled by the Federal Securities Act of 1933 or the Securities Exchange Act of 1934. We hold that such a transaction is not governed by the federal securities laws and affirm the district court's dismissal for lack of subject matter jurisdiction.

The facts reflect a typical sale of a one-owner business by transfer of the stock in a corporation. Defendant Winkler owned all the stock in two corporations through which he ran a heating and air conditioning business. When he decided to sell the business, he listed it with defendant Harris. He received a written offer to purchase his business signed by plaintiffs Robert A. King and Richard J. King. Both parties executed a tentative written agreement of sale and jointly employed an attorney to prepare the closing documents. The agreement to sell the business was made before the concept of how to structure the sale was even discussed.

Although the record is unclear as to who was responsible for making the sale in part a stock sale, both plaintiffs and defendants state that it was not their decision. In any event, the transaction was so structured in the closing documents that Winkler sold all his stock in one of the two corporations, North Georgia Mechanical Co., to the Kings. That corporation then acquired the stock of the other corporation, North Georgia Mobile Homes Supply, Inc. Following closing, the Kings assumed full control of the management and operation of both businesses, and Winkler continued to work for the Kings as an employee until he was laid off.

The Kings with the two corporations joined as party plaintiffs later filed suit alleging violations by defendants of the Securities Act of 1933, 15 U.S.C.A. § 77a *et*

being decided by a quorum due to the death of Judge Edenfield on December 27, 1981. 28 U.S.C. § 46(d).

seq., the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., and various provisions in the Georgia statutes concerning fraud, deceit, misrepresentation and concealment of fact, and breach of contract. For the purpose of this appeal, fraud is assumed. The sole question is whether there is federal jurisdiction of the lawsuit.

Subject matter jurisdiction of the fraud alleged in the complaint depends upon whether this transaction, admittedly involving stock, is a security transaction covered by the federal securities laws.

Both parties rely on the purposes of and policies behind the federal securities laws as examined by the Supreme Court in the leading case of United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). Forman was a two-part decision. The sale involved shares of the common stock in a subsidized low cost cooperative housing corporation. The Court first held that the instruments transferred must be viewed in terms of their substance, rather than their form. It rejected the suggestion that a transaction evidenced by the sale of "stock must be considered a security transaction simply because the statutory definition of security includes the words 'any ... stock.'" 421 U.S. at 848, 95 S.Ct. at 2058. The Court held that Congress intended the application of the federal securities laws to turn on "the economic realities underlying a transaction, and not the name appended thereto." 421 U.S. at 849, 95 S.Ct. at 2059. The Court then held a security was not involved because the shares had none of the characteristics that in the commercial world fall within the concept of a security. The most common feature of stock, the Court said, is the right to receive dividends contingent upon an apportionment of profits. Other characteristics traditionally associated with stock are: they are negotiable; they can be pledged and hypothecated; they confer voting rights in proportion to the number of shares owned; and they can appreciate in value. 421 U.S. at 851, 95 S.Ct. at 2060.

Applying this part of the Forman decision indicates coverage by the securities laws. The stock transferred in this case clearly has all the characteristics that fit the ordinary conception of a security. The defendants do not argue otherwise. The question therefore is whether every sale that involves an instrument commonly known as a "security" is a "security transaction" under the federal statute.

For guidance on this question, we turn to the second half of the Forman opinion. There the Court examined the alternative holding of the lower court that the shares involved an "investment contract" as defined by the Securities Acts, and the plaintiffs' argument that in any event what they agreed to purchase is "commonly known as a 'security.'" Here the Court reasoned:

In considering these claims we again must examine the substance—the economic realities of the transaction—rather than the names that may have been employed by the parties. We perceive no distinction, for present purposes, between an "investment contract" and an "instrument commonly known as a 'security.'"

421 U.S. at 851–52, 95 S.Ct. at 2060–61. The Court then set out a test which "embodies the essential attributes that run through all of the Court's decisions defining a security." 421 U.S. at 852, 95 S.Ct. at 2060. This "economic reality" test involves three elements: (1) an investment in a common venture; (2) premised on a reasonable expectation of profits; (3) to be derived from the entrepreneurial or managerial efforts of others. 421 U.S. at 852, 95 S.Ct. at 2060.

If the "economic reality" test is to be used to determine whether there is a security transaction, as well as to determine whether there is a security in the traditional sense, the Kings' purchase of the business fails to qualify. Though there is some doubt that there was a sharing or pooling of funds since the Kings purchased all the stock of the business, they clearly fail to satisfy the third element of the economic reality test which requires that profits be derived from the efforts of others. The Kings took over management and control of

the business. They expected no profit from the entrepreneurial or managerial efforts of anyone other than themselves. Thus, the "economic realities" of the transaction indicate not a security transaction, but rather the sale and purchase of a business using stock merely as a method of vesting the Kings with total ownership.

Based on the rationale of *Forman*, we reject a literal test and hold that the "economic realities" test is appropriate to determine whether a transaction involving stock in a corporation is a "security transaction" or an "investment contract" governed by the Federal Securities Acts. This Circuit has similarly rejected a literal application in promissory note cases. *National Bank of Commerce v. All American Assurance Co.*, 583 F.2d 1295 (5th Cir. 1978); *Woodward v. Metro Bank*, 522 F.2d 84 (5th Cir. 1975); *McClure v. First National Bank*, 497 F.2d 490 (5th Cir. 1974), *cert. denied*, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *Bellah v. First National Bank*, 495 F.2d 1109 (5th Cir. 1974).

Two other circuits have come to this same conclusion. The Seventh Circuit case of *Frederiksen v. Poloway*, 637 F.2d 1147 (7th Cir.), *cert. denied*, 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981), involved facts almost identical to these facts. There plaintiffs purchased 100% of the corporate stock and assumed control of the marina. They continued to employ the selling shareholder and former president. Later, the purchasers sued the selling shareholder for securities fraud. The Seventh Circuit following *Forman*, confirmed the dismissal for lack of subject matter jurisdiction, finding no federal security to be involved. The court said:

> Not all transactions which involve "stock" are necessarily covered by the securities laws. Rather, the test for coverage, in general, is whether the purchaser is placing money in the hands of another who will control the funds and the business decisions. If, however, the purchaser is assuming control of the critical decisions of the corporation, then the

transaction is not considered to involve securities.

637 F.2d at 1148.

In *Chandler v. Kew, Inc.*, [1979] Fed.Sec. L.Rep. (CCH) ¶ 96,996 (10th Cir. 1977), the Tenth Circuit held that the sale of a liquor store, with the incidental transfer of stock, was not a sale of "securities." The court said:

> [T]he economic realities of the case at bar show that the plaintiff was buying a liquor store, and incidentally as an indicia of ownership, was receiving 100% of the stock of the company which owned the store. There was no security transaction within the purview of the federal statutes.

On the other hand, the Kings rely heavily on the Fourth Circuit case *Coffin v. Polishing Machines, Inc.*, 596 F.2d 1202, 1204 (4th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979). The facts of *Coffin* appear to be materially different from the case at bar. There the plaintiff was contacted by the president of Polishing Machines, Inc. and offered corporate stock in return for money needed to finance the expansion of the business. The parties reached an agreement in which the plaintiff acquired 50% of the outstanding stock and became executive vice president. Noting that the descriptive material furnished the buyers during negotiations indicated that Polishing Machines wanted to sell stock to finance corporate expansion, the court stated the transaction was the very sort of transfer with which the federal securities laws are most concerned, the sale of securities to raise capital for profit making purposes. 596 F.2d at 1204. The language of *Coffin*, however, would seem to support a literal application of the securities laws. To this extent, it is contrary to the Seventh and Tenth Circuit decisions which we accept as offering the better rationale.

Good arguments can be made on both sides of the issue. Some lower courts have reached the same conclusion. *Dueker v. Turner*, [1979–1980] Fed.Sec.L.Rep. (CCH) ¶ 97,386 (N.D.Ga. Dec. 28, 1979); *Bula v. Mansfield*, [1979] Fed.Sec.L.Rep. (CCH)

¶ 96,964 (D.Colo. May 13, 1977). Others appear to have reached a contrary decision. *Mifflin Energy Sources, Inc. v. Brooks*, 501 F.Supp. 334 [1980] Fed.Sec.L.Rep. (CCH) ¶ 97,734 (W.D.Pa., 1980); *Titsch Printing, Inc. v. Hastings*, 456 F.Supp. 445 (D.Colo. 1978); *Bronstein v. Bronstein*, 407 F.Supp. 925 (E.D.Pa.1976). All have cited *Forman* as authority for their respective holdings. In our judgment, however, *Forman* requires the decision we make here.

It is apparent that the approach used here is not a function of numbers. A sale of less than 100% of the stock might not be covered by the Acts. A sale of 100% of the stock can be covered by the Acts. The number of sellers and purchasers will not necessarily control the outcome. Once the literal words of the statute are abandoned for an "economic realities" test, each case must be evaluated on its own facts to determine if the transaction, though within the letter of the statute, is not within its spirit nor the intent of the lawmakers. *Forman*, 421 U.S. at 849, 95 S.Ct. at 2059. Although there will necessarily be close cases at the margin of this principle, this case comes clearly into focus. The purchasers were buying and the seller was selling a business. The stock was the vehicle of transfer. The purchasers' expectation of profit would come from their own efforts, not those of others. This was not a security transaction or investment contract intended to be governed by the Federal Securities Acts.

AFFIRMED.