Clayton A. STACEY, et al., Plaintiffs,

v.

CHARLES J. ROGERS, INC., et al., Defendants.

Helen H. GLEESON, et al., Plaintiffs,

v.

CHARLES J. ROGERS, INC., et al., Defendants.

Charles K. ROGERS, et al., Plaintiffs,

v.

CHARLES J. ROGERS CONSTRUCTION COMPANY, et al., Defendants.

Civ. A. Nos. 77–72723, 80–74359 and 81–71195.

United States District Court, E. D. Michigan, S. D.

June 23, 1982.

Michael W. Hartmann, Miller, Canfield, Paddock & Stone, Detroit, Mich., for Stacey et al.

Lee C. Patton, Sullivan, Ward & Bone, Detroit, Mich., for Gleeson et al.

Stuart Sinai, Birmingham, Mich., for Rogers et al.

W. Merritt Jones, Richard C. Sanders, Timothy W. Hefferon, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

ANNA DIGGS TAYLOR, District Judge.

Charles J. Rogers, Inc. (hereinafter Incorporated) and Charles J. Rogers Construction Company (hereinafter Construction) are Michigan corporations of which the founder, Charles J. Rogers, was the sole stockholder until his death. Mr. Rogers was also the chief operating officer of Incorporated, in Detroit, Michigan, while his son-in-law, defendant William Leoni (husband of daughter Joanne Leoni) served as chief operating manager of the Construction Company, in Flint, Michigan.

On the 1971 death of Charles J. Rogers his nine children, all of whom are plaintiffs in this consolidated action (except Joanne Leoni), succeeded to ownership of the stock in both companies. Charles K. Rogers, son of the founder, assumed the presidency of both corporations, and various other heirs assumed positions as officers and directors of the corporations; but William Leoni continued to manage the Construction company in Flint.

By 1974, Incorporated had suffered such substantial losses that its banker was about to call in its loan, which would in turn have resulted, *inter alia*, in loss of its bonded status. Thereupon, Leoni stepped in and obtained a loan commitment from a Flint Bank to cover the exigency, but with the condition that all shareholders of both corporations form a Voting trust, of which Leoni would become Trustee. This was accomplished by August of 1974, after which Charles K. Rogers was relieved of the presidency of Incorporated by Leoni, who appears to have assumed managerial responsibility thereafter for both corporations.

On May 20, 1975, an agreement was entered by which all stockholders (except William and Joanne Leoni) sold all of their stock in both corporations to the corporations or, in effect, to Leoni.

The first of these three consolidated actions was filed against Leoni and the corporations in 1979. Each suit claims, *inter alia*, violations of the Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b). Defendants have filed a motion to dismiss the claims of all plaintiffs made pursuant to that statute for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Defendants have cited to this court a series of cases which have descended from *United Housing Foundation v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) in which Justice Powell admonished trial courts to look beyond the mere word, "security", in the federal securities laws and before holding those laws applicable to every transaction in which the name "stock" is given to the instrument, to disregard mere form for substance and to emphasize the economic reality of the transaction.

Since *Forman*, the Seventh Circuit Court of Appeals has particularized that doctrine in *Frederiksen v. Poloway*, 7th Cir., 637 F.2d 1147, cert. denied 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981), and *Can-*

field v. Rapp, 7th Cir. 654 F.2d 459 (1981). Both of those cases hold, quite unequivocally, that when a purchase of stock actually involves the purchase and assumption of control of an entire business, the "economic realities" of the situation require that the transaction not be drawn within the protective scope of the federal securities laws.

These cases have elicited substantial comment: see, e.g. Seldin, "When Stock is Not a Security: The Sale of Business Doctrine Under the Federal Securities Laws." 37 Bus.L. 637 (1982). The Fourth Circuit has declined to deny the protection of the federal securities laws to a stock purchaser merely because he intended to participate in the management of a corporation; and further declined to search "economic realities" absent some showing that ordinary corporate stocks are other than what they appear to be, in Coffin v. Polishing Machines, Inc., 4th Cir. 596 F.2d 1202 (1979). The Second Circuit, in Golden v. Garafalo, 678 F.2d 1139 (1982), has flatly rejected the Sale of Business Doctrine. That court wrote at 1144:

> We are cited to no legislative history contradicting this perfectly plausible reading of the statutory language. The House Report accompanying the bill which became the '33 Act indicated that the definition of "security" was intended to cover "the many types of instruments that in our commercial world fall within the ordinary concept of a security." H.R. Rep.No.85, 73rd Cong., 1st Sess. 11 (1933). We regard this statement as support for the proposition that instruments ordinarily regarded as "stock" are a "security", notwithstanding that the underlying transaction involves a transfer of control. This understanding of Congressional intent, moreover, has been almost universally accepted by the courts, the relevant agency and the bar for over 40 years. Only after Forman has there been a serious challenge to this reading of the statutes.

The Sixth Circuit has not yet been called upon to rule on the Sale of Business Doctrine; and the motion presently before this court does not require its confrontation at this time. In McGrath v. Zenith Radio, 7th Cir., 651 F.2d 458 (1981), the Seventh Circuit itself appears to have come to the realization that the "Doctrine" was not so fixed a lodestar as it had previously announced. In McGrath, the plaintiff was one of many stockholders who had sold his stock to a buyer who, with that transaction, became the sole owner of the corporation. The plaintiffs claimed to have been defrauded by the control-purchasing buyer of his stock, as is the instant case. Although in Canfield and Fredriksen the transaction announced as exempted from the law's protection was the sale of a business, the court explains in McGrath that it only meant the control-buying half of the sale of a business. At footnote 5, 651 F.2d at 458, the court wrote:

> The Basford shares constituted "securities" in the hands of plaintiff as well as the other sellers and they did not lose that status merely by reason of the fact that all of the Basford shares were sold at the same time. To conclude otherwise would be to hold that a purchaser of corporate shares may deprive investors/sellers of the protections of the securities laws if it can arrange that all of the corporation's shares are purchased at one time. Whatever the breadth of language, clearly Frederiksen does not require such a result. [Emphasis added.]

The Seventh Circuit itself, accordingly, has held that the Sale of Business Doctrine is not to be applied as defendants seek herein. This court is not, therefore, required to rule upon its acceptability in this Circuit. Accepting it, and applying it as it is recognized in the Seventh Circuit, it does not support the dismissal of plaintiffs' claims.

Motion denied.