The SEAGRAVE CORPORATION,
formerly known as Seakoff Corp.,
Plaintiff-Appellant,

v.

VISTA RESOURCES, INC., formerly known as The Seagrave Corporation, Eastern Vista Corp., formerly known as Armour Glass East Corp., Western Vista Corp., formerly known as Flour City Architectural Metals Corporation, Arnold A. Saltzman, Carl J. Simon and Herbert J. Kirshner, Defendants-Appellees.

No. 62, Docket 82–7238.

United States Court of Appeals,
Second Circuit.

Argued Sept. 23, 1982.
Decided Dec. 27, 1982.

Michael C. Silberberg, New York City (Geri S. Krauss, Amy E. Lorber, Golenbock & Barell, New York City, of counsel), for plaintiff-appellant.

Milton S. Gould, New York City (Sheldon D. Camhy, Ronald D. Lefton, Shea & Gould, New York City, of counsel), for defendants-appellees Saltzman, Simon and Kirshner.

Jack Weinberg, New York City (Graubard, Moskovitz, McGoldrick, Dannett & Harowitz, New York City, of counsel), for defendants-appellees Vista Resources, Inc., Eastern Vista Corp. and Western Vista Corp.

Edward F. Greene, Gen. Counsel, Jacob H. Stillman, Associate Gen. Counsel, Rosalind C. Cohen, Asst. Gen. Counsel, Steven B. Boehm, Atty. and Paul Gonson, Sol. Securities and Exchange Com'n, Washington, D.C., amicus curiae.

Before LUMBARD, MESKILL and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

We are asked to review an asset buy-out, entered into by sophisticated business persons, of some of the subsidiaries of Vista Resources, Inc. Included among the assets sold was the outstanding stock of these subsidiary and their sub-subsidiary corporations. In order to determine whether federal securities laws covered the sale, Judge Sweet applied the sale of business doctrine and concluded, relying on certain Supreme Court cases, that this was not an "investment" by the buyers, but rather a commercial venture. Thus, when analyzed under the established "economic reality" test, this transfer of "stock" did not qualify as a sale of "securities" encompassed by the Securities Act of 1933 or the Securities Exchange Act of 1934. Three months later our Court decided *Golden v. Garafalo,* 678 F.2d 1139 (2d Cir.1982), and rejected the sale of business doctrine. Because Judge Sweet did not have the benefit of *Golden* when he made his decision he used what now turns out to be an incorrect analysis of the legal problem before him. Therefore, we remand this case to give the district court a fair opportunity to decide the issue in light of *Golden* and to develop a factual record, presently lacking, as to the attributes of the subsidiaries' and sub-subsidiaries' stock.

Vista Resources, Inc. (Old Seagrave) is a publicly traded company whose stock is listed on the New York Stock Exchange. New Seagrave, a closely-held corporation, is owned by the Koffman family. Following protracted negotiations spanning several years between the Koffmans and Old Seagrave, the Koffmans contracted to purchase from Old Seagrave the assets of 29 of its subsidiary and sub-subsidiary corporations in exchange for $17,082,652 in cash and a $3,000,000 promissory note. The transaction was structured as a purchase of all of the assets, including real property, machinery, equipment, and the stock, of the 29 subsidiary corporations. The sale was closed on September 30, 1980.

In June 1981 Old Seagrave instituted an action in New York State Supreme Court alleging breach of contract arising from New Seagrave's failure to pay certain tax obligations. New Seagrave first answered and counterclaimed in that forum; then it instituted the present action under federal securities laws in the United States District Court for the Southern District of New York, 534 F.Supp. 378 (1982) (Sweet, J.), alleging that Old Seagrave's representations regarding its financial condition were fraudulent, false and misleading. Old

Seagrave moved to dismiss the federal action on the grounds that the challenged transaction did not involve securities and that, therefore, the district court lacked subject matter jurisdiction.

The question before Judge Sweet was whether the instruments—stock of subsidiaries and a promissory note—transferred as part of the sale of assets to New Seagrave qualified as securities under section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), ('33 Act) and section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), ('34 Act). Applying the economic reality test and the sale of business doctrine, the district court in a well-reasoned opinion determined that neither the stock nor the promissory note in question qualified as securities and that therefore the securities laws did not apply to the transaction. Having concluded that it lacked subject matter jurisdiction, the court granted the motion to dismiss. From this determination New Seagrave has appealed.

The issue of whether stock or notes transferred as part of a sale of a business qualify as securities within the meaning of the '33 Act and the '34 Act has divided the circuits. Like modern day beachcombers with "finders" rods seeking treasure beneath the sand, circuit courts cull through Supreme Court decisions in search of a phrase to fortify their view of how "security" is defined under the Acts. The Seventh, Tenth and Eleventh Circuits apply the sale of business doctrine, which focuses on the economic reality of what was sold where there is a sale of 100% of a corporation's stock. These circuits hold that a sale of a business in which stock is transferred as an indicia of ownership does not involve securities within the context of the '33 and '34 Acts. *See Sutter v. Groen,* 687 F.2d 197 at 204 (7th Cir.1982); *King v. Winkler,* 673 F.2d 342, 344–46 (11th Cir.1982); *Frederiksen v. Poloway,* 637 F.2d 1147, 1151–54 (7th Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981); *Chandler v. Kew, Inc.,* 691 F.2d 443 at 444 (10th Cir.1977); *see also,* Seldin, *When Stock Is Not a Security: The "Sale of Business" Doctrine under the Federal Securities Laws,* 37 Bus.Law 637 (1982); Thompson, *The Shrinking Definition of a Security: Why Purchasing All of a Company's Stock Is Not a Federal Security Transaction,* 57 N.Y.U.L.Rev. 225 (1982). Reading the same Supreme Court cases as focusing more on the nature of the instrument—whether it is ordinary stock or a note with the usual characteristics of such instruments—the Second and Fourth Circuits have concluded that federal securities laws do apply to the same 100% sale of corporate stock. *See Golden,* 678 F.2d at 1144; *Coffin v. Polishing Machines, Inc.,* 596 F.2d 1202, 1204 (4th Cir.), *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979); *see also, Glick v. Campagna,* 613 F.2d 31, 35 (3d Cir.1980) (Despite argument that the entity was in reality a partnership, sale of 50% of closed corporation's stock held sufficient to confer jurisdiction under the federal securities laws). While the din of battle over the issue of whether ordinary "stock" is always a "security" continues, our circuit in *Golden* took a position to which this panel is obliged to adhere. *See Kremer v. Chemical Construction Corp.,* 623 F.2d 786 (2d Cir.1980), *aff'd on other grounds,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *accord United States v. Fatico,* 603 F.2d 1053, 1058 (2d Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980).

The district court ruling was made three months before this Court rejected the sale of business doctrine upon which Judge Sweet relied. *See Golden,* 678 F.2d at 1144. We must now regard ordinary "stock" as "securities" within the meaning of the '33 and '34 Acts regardless of the nature of the transaction in which the "stock" is transferred. The only requirement for securities law coverage is that the instrument have the characteristics of "stock." These attributes include: acceptance as such for purposes of local corporation and commercial law and for purposes of local, state and federal tax law; entitlement of its holders to dividends and realization of appreciation in value; and alienability by way of transfer to others or by pledge as collateral.

■ Although there are considerable references to the word "stock" in the record now before us, nowhere is it made clear what characteristics the instruments designated "stock" possess. They may or may not be "stock" within the ordinary meaning of that term. Since the transaction involved here was not a purchase of the publicly traded shares of Old Seagrave, but rather a buy-out of the assets, including instruments labeled "stock" of closely-held subsidiaries, some proof is required of the attributes of the instruments sold. If upon remand the court determines that the instruments have the common characteristics of stock and a note, *see Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir.1976), then their holder, New Seagrave, is entitled to protection under the federal securities laws and the district court should assume jurisdiction over the case.

■ Only if the instruments lack the ordinarily accepted attributes of stock need the court resort to the "economic reality" test set forth in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *see Golden,* 678 F.2d at 1144, to ascertain whether these instruments may be an uncommon form of securities covered by the Acts like, for example, an investment contract. According to *Howey* the economic reality test defines as a sale of securities a transaction in which a person "invests his money in a common enterprise and is led to expect profits solely from the efforts" of others. 323 U.S. at 301, 66 S.Ct. at 1104; *see also Marine Bank v. Weaver,* 455 U.S. 551, 556, 102 S.Ct. 1220, 1223, 71 L.Ed.2d 409 (1982) (an instrument seemingly within the expansive definition of security contained in the '34 Act is not so considered if "the context otherwise requires"); *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 851–52, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975); *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967) (in analyzing whether an instrument is a security "form should be disregarded for substance and the emphasis should be on economic reality"). Inasmuch as the economic reality test, if it must be used, has already been properly applied by Judge Sweet to the instruments involved in the current transaction, his original decision to dismiss the complaint should stand.

Accordingly, the case is remanded for further proceedings consistent with this opinion. We retain jurisdiction.

LUMBARD, Circuit Judge, concurring and dissenting:

Remaining of the same views which I expressed in my dissent in *Golden v. Garafalo,* I nevertheless concur with so much of Judge Cardamone's opinion as directs the remand of this case to permit Judge Sweet to find reasons, if he can, to adhere to the order dismissing the complaint. If the law of the Circuit is to continue to be determined by the majority in *Golden v. Garafalo,* Judge Sweet's task will rival the labors of Hercules.

Moreover, if *Golden* is to stand, our district courts will soon be burdened with an escalating stream of cases where purchasers of businesses have become disillusioned with the bargains they made. In this case, as in *Golden,* no investor needs the protection of the federal securities laws. Here the parties involved are relatively sophisticated businessmen who contracted to purchase a business in order to control its operation themselves. There is no good reason why the federal courts should hear such cases and permit such a totally unnecessary expansion of federal jurisdiction. To do so seems to disregard all that we are constantly told by our brethren on the Supreme Court, and that we ourselves know, about the overworked federal judicial system.

Undoubtedly counsel for the appellees will, at the appropriate time, move for en banc consideration of this case and the rule adopted by the *Golden* panel. I believe he will have more than one vote for such a motion.