JONES & COMPANY,
Plaintiff-Respondent,

v.

John BISHOP, Defendant-Appellant.

No. 13026.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 1, 1984.

John R. Lewis, Springfield, for plaintiff-respondent.

Thomas E. Klinginsmith, Carthage, Thomas L. Williams, Roberts, Fleischaker & Scott, Joplin, for defendant-appellant.

PREWITT, Judge.

Plaintiff sued defendant, seeking commissions under two "exclusive right to sell" contracts. Following nonjury trial, the trial court found that plaintiff was entitled to a commission of $55,000.00, less $5,000.00 previously received. It entered judgment of $50,000.00 for plaintiff. Defendant appeals.

The trial court made a detailed finding of fact which is supported by the evidence and not questioned by either party. The portions relevant to the questions presented on appeal state:

"Plaintiff is a Missouri corporation, of Springfield, Missouri, licensed as a real estate broker but not licensed under the Uniform Securities Act of Missouri. Defendant, with his wife, was the sole stockholder of Silvertrol Industries [Inc., hereafter Silvertrol] of Pierce City, Missouri, and Tubular Metal Displacement, Inc., [hereafter Tubular] of Webb City, Missouri.

On February 13, 1980, plaintiff and defendant entered into two listing agreements granting plaintiff the exclusive right to sell Silvertrol for $2,000,000.00 and Tubular for $650,000.00. These agreements provided for expiration on August 13, 1980, but contained the following provision: 'If the property is sold, leased or exchanged during the term of this listing, or if sold, leased or exchanged to anyone within 180 days after expiration or cancellation, who has been shown said property during the term of this listing, we agree to pay a ten percent fee on the gross sale price of the property, provided that this clause does not apply if seller lists the property with another real estate agency.'

On June 18, 1980, a 'Real Estate Sale Contract' was entered into between defendant and Joseph N. Jaeggers, Jr., for the sale of both Silvertrol and Tubular for a price of $2,330,000.00, contingent upon Jaeggers obtaining satisfactory financing on or before August 31, 1980. This initial contract was replaced by a more detailed agreement signed on June 27, 1980, but still contingent upon satisfactory financing by August 31, 1980.

On July 16, 1980, the defendant and Jaeggers executed what they called a 'Take Over Agreement,' which provided that Jaeggers would assume management and operation of the two companies pending the completion of the sale. On this same date, Jaeggers and his wife executed two notes payable to defendant and his wife in the amounts of $350,000.00 and $1,960,000.00.

Beginning after June 18, 1980, the plaintiff was assisting Jaeggers in attempting to find satisfactory financing and this assistance continued after Jaeggers took possession of Silvertrol and Tubular on July 16, 1980. On August 26, 1980, Jaeggers and defendant, acting by his wife, executed an 'Addendum to Sales Contract,' which extended the date for obtaining financing to December 1, 1980, and extended the closing date to January 1, 1981.

\*       \*       \*       \*       \*       \*

On December 12, 1980, defendant and his wife, Jaeggers and his wife, and Tubular executed an 'Agreement to Rescind Agreements to Restore Parties and Contract for Sale of Tubular Metal Products, Incorporated.' The sale price for the Tubular assets set out in this agreement is $550,000.00. On December 23, 1980, defendant and his wife and Tubular executed a bill of sale and a warranty deed conveying the assets of Tubular to Jaeggers Custom Metal Machine Incorporated."

Real estate and other assets were transferred by the deed and bill of sale and there is no indication that any corporate stock was sold. The agreement of December 12, 1980 stated that "Jaggers contemplates the formation of a Missouri corporation and any of Jaggers' rights and liabilities here-

under may be assigned to such corporation". In the record his name is shown sometimes as "Jaggers" and sometimes as "Jaeggers". There was evidence that plaintiff's employees sent him information regarding Silvertrol and Tubular, showed him their tangible assets and worked with him to secure financing to purchase them.

Defendant's first point contends that the trial court erred in allowing plaintiff to introduce evidence of the December 12, 1980, agreement to sell assets of Tubular to Jaggers. He contends it was beyond the scope of the pleadings.

Plaintiff stated in its petition that it was entitled to a commission "by either furnishing a buyer to the Defendant who was ready, willing and able to perform the terms of the contracts" plaintiff had with defendant or "alternatively, Plaintiff has performed all the terms and conditions of its contracts . . . by supplying to Defendant a buyer who has fully consummated the terms of the sale as denominated in the sales contract marked Exhibit C attached hereto". Exhibit C was the contract of June 18, 1980, and defendant contends that plaintiff's petition only alleged that its commission was due because of it.

We believe that evidence of the December agreement was admissible. It was a part of the continuing transactions between Jaggers and defendant and was relevant as to whether plaintiff produced a ready, willing and able purchaser and as to the amount of plaintiff's damages. The general rule, applicable here, is that if a real estate broker procures a purchaser who is ready, willing and able to buy on the vendor's terms, it is entitled to a commission. *Marrs v. Twitty,* 635 S.W.2d 374, 376 (Mo.App.1982). Point one is denied.

We next consider defendant's contention that the trial court erred in finding for plaintiff because plaintiff failed to establish that it was a registered broker-dealer under the Missouri Uniform Securities Act, Chapter 409, RSMo 1978. Defendant asserts that as Tubular and Silvertrol were shown as corporations in the real estate listing contracts, plaintiff intended to receive a commission based on the sale of corporate stock. Section 409.201, RSMo 1978, makes it unlawful for any person to transact business in Missouri as a broker-dealer unless registered as one under the Act. The trial court denied this contention, noting "the listing agreements do not specify that the transaction was to be a sale of stock and in any event the sale that was actually made was a sale of physical assets."

As authority under this point defendant cites § 409.201, *Greer v. Zurich Insurance Company,* 441 S.W.2d 15 (Mo.1969), and *King v. Moorehead,* 495 S.W.2d 65 (Mo.App. 1973). Neither of these cases involve brokers or commissions of any kind and are cited for the proposition that an enforceable contract cannot arise out of a transaction prohibited by statutory law. They are of little help here. Plaintiff cites only §§ 409.201 and 409.401(*1*), RSMo 1978.

Our research has found authority which we believe relevant. *Fisch v. Radoff,* 353 So.2d 160, 162 (Fla.App.1977), held that a real estate broker was not prevented from recovering a commission because the hotel to be sold was a corporate asset as "both parties understood at the time of contracting that, although the means of accomplishing the sale of real property would be by transfer of corporate stock the substantive intent of their dealings was to effect a sale of real property."

Based upon the economic realities test of *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), *King v. Winkler,* 673 F.2d 342 (11th Cir.1982), held that the purchase of a business through the sale of 100% of its corporate stock was not a transaction governed by federal securities laws. A similar result was reached in *Kaye v. Pawnee Const. Co.,* 680 F.2d 1360, 1366 (11th Cir. 1982). It held that neither federal or state securities law applied to the sale of 100% of a business. See also Note, *The Sale of Business Doctrine: A Transactional Ap-*

*proach for Determining the Coverage of The Federal Securities Laws,* 48 Mo.L.Rev. 1073 (1983).

*Sutter v. Groen,* 687 F.2d 197 (7th Cir. 1982), states that under the "sale of a business doctrine" the sale of an entire business by a transfer of corporate stock to a single purchaser is not a securities transaction for the purposes of federal securities law. Apparently contra are *Seagrave Corp. v. Vista Resources, Inc.,* 696 F.2d 227 (2d Cir.1982); *Cole v. PPG Industries, Inc.,* 680 F.2d 549 (8th Cir.1982), and *Golden v. Garafalo,* 678 F.2d 1139 (2d Cir.1982).

*Kaiser v. Olson,* 105 Ill.App.3d 1008, 61 Ill.Dec. 624, 435 N.E.2d 113 (1982), held that sale of more than half but less than 100% of the stock of a corporation was not governed by the Illinois Securities Law. *Tech Resources, Inc. v. Estate of Hubbard,* 246 Ga. 583, 272 S.E.2d 314 (1980), held that the sale of the entire stock of a corporation to one purchaser is not a sale of securities subject to the Georgia and federal securities laws. See also *Maganas v. Northroup,* 112 Ariz. 46, 537 P.2d 595, 597–598 (1975).

In determining if an interest in real estate, title of which was held by trustees, is a "security" under a "Securities Act", form should be disregarded for substance and the emphasis put on economic reality. *Wiener v. Brown,* 356 So.2d 1302, 1306 (Fla.App. 1978). See also *O'Neill v. State,* 336 So.2d 699, 701 (Fla.App.1976). In substance this was to be, and was a sale of tangible assets, and not of a security. Plaintiff was not required to be registered under the Missouri Uniform Securities Act to assist in the sale.

■ Defendant also contends that the trial court erred in determining that defendant was liable to plaintiff because there had been failure of consideration of the agreements between them. Failure of consideration is an affirmative defense and the burden to show it was upon defendant, the party alleging it. Rule 55.08; *Ennis v. McLaggan,* 608 S.W.2d 557, 561 (Mo.App. 1980). It is obvious that no such failure was shown. Furthermore, the record shows substantial acts by plaintiff constituting consideration and the trial court could have determined that plaintiff's efforts resulted in the sale of Tubular's assets.

■ Defendant asserts in its remaining point that defendant is not liable to plaintiff because it breached a duty to defendant "due to its failure to disclose material facts relating to the financing of Jaggers." The trial court found this contention to be unsupported by the evidence. That was a factual issue for its determination. Under our limited review stated in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), we must affirm this determination.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.