William H. CHRISTISON, as Trustee of the bankrupt estate of Anthony A. Sutter, Plaintiff-Appellant,

v.

E.B. GROEN and Naomi Groen, Defendants-Appellees.

No. 83–2741.

United States Court of Appeals, Seventh Circuit.

Argued May 9, 1984.

Decided Aug. 9, 1984.

Richard L. Steagall, Nicoara & Steagall, Peoria, Ill., for plaintiff-appellant.

Franklin L. Renner, O'Hern, Wombacher, Moon & Renner, Peoria, Ill., for defendants-appellees.

Before BAUER and CUDAHY, Circuit Judges, and KELLAM, Senior District Judge.[*]

BAUER, Circuit Judge.

Happy Radio, a closely held corporation formally incorporated on May 14, 1980, entered an agreement with Defendants E.B. and Naomi Groen, sole shareholders of Bret Broadcasting Company, in April 1980 to buy all of the Groens' stock in Bret Broadcasting over a twelve-year period. During this period, Happy Radio had the right to manage Bret Broadcasting's radio station in Pontiac, Illinois. Plaintiff Sutter bought seventy percent of the shares of Happy Radio in March 1980 after reviewing the stock purchase agreement and consulting with an attorney. Sutter participated in the formation of Happy Radio, and elected himself president.

Sutter's complaint against the Groens alleged that they overstated Bret Broadcasting's earnings in order to induce Happy Radio to buy Bret Broadcasting and to induce investors to buy stock in Happy Radio. Sutter claimed that those misrepresentations caused him to buy his Happy Radio stock, which now is worthless.

In the first appeal of this case, *Sutter v. Groen*, 687 F.2d 197 (7th Cir.1982), this court vacated the district court's dismissal of Sutter's complaint and remanded for proceedings regarding whether Sutter bought his stock merely as an investment or with the intent to manage the business. This court indicated that a purchase of stock which results in the purchaser owning more than fifty percent of the outstanding stock of a business may not implicate federal securities law protections if the purchaser intends to take control of and operate the business rather than merely invest in the business. The district court on remand found that Sutter bought his stock not merely as an investor, but instead with the intent to manage and control the business. The court thus ruled that this stock purchase was not a securities transaction within the definition of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78c(a)(10), 78j(b) (1982), the Securities Act of 1933, 15 U.S.C. § 77b(1) (1982), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1951), and dismissed Sutter's federal claims. The court also dismissed Sutter's state law claims.

The principal issue in this appeal is whether Sutter's purchase of seventy percent of the common stock of Happy Radio constituted a securities transaction within the scope of the Securities Acts and there-

* The Honorable Richard B. Kellam, Senior Judge of the United States District Court for the East-

ern District of Virginia, is sitting by designation.

fore gave the district court jurisdiction to adjudicate Sutter's claims of misrepresentation and fraud against the Groens. Sutter urges us to abandon the sale of business doctrine adopted in *Frederiksen v. Poloway,* 637 F.2d 1147 (7th Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981). Sutter also argues that we should abandon our rule establishing a rebuttable presumption that a purchaser who buys a controlling interest in a business intends to control that business and thus is not making an investment requiring the protection of federal securities laws. *Sutter,* 687 F.2d at 203. We must reject those arguments. The record indicates that none of the district court's findings of fact are clearly erroneous, and the court properly applied the law to those facts. We therefore affirm.

## I

■ The sale of business doctrine basically states that a sale of a business effectuated by a transfer of stock does not involve a security within the meaning of the Securities Acts when the transaction is a commercial venture rather than an investment. This circuit has been in the forefront of development of that doctrine. Our decisions reflect our belief that the sale of business doctrine most accurately reflects the economic reality of a transaction involving the sale of an entire business.[1]

In *Frederiksen,* this court ruled that the sale of a business through a stock transfer did not involve a "security" under Section 78c(a)(10). The court found that, in economic reality, the sale constituted a commercial venture rather than an investment. To reach its result, the *Frederiksen* court first rejected the claim that because Section 78c(a)(10) specifies "stock" as a securi-

ty, any transaction involving stock implicates federal securities laws. The court instead determined that the prefatory phrase "unless the context otherwise requires," and the Supreme Court's decision in *United Housing Foundation v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), indicate that the application of the Securities Acts depends on the substance of the transaction.

The economic reality test outlined in *Forman* defines a transaction involving a security as "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." 421 U.S. at 852, 95 S.Ct. at 2060. The *Forman* plaintiffs failed the second element of the test; they purchased their housing units simply as places to live, not in expectation of financial returns on their investments. In *Frederiksen,* the plaintiffs failed the first and third elements of the test. The purchase of the entire business there was not an investment in a common venture, and the plaintiffs themselves assumed managerial control of the purchased business instead of relying on the efforts of others.

■ The *Forman* decision is not limited to instruments lacking the traditional characteristics of corporate stock. *Contra Golden v. Garafalo,* 678 F.2d 1139 (2d Cir. 1982). As the *Forman* Court stressed, Congress intended to protect the interest of investors, and the existence of an investment is determined by the economic substance of a transaction. The Court did indicate that the name appended to an instrument, if the instrument has some of the significant characteristics of the named instrument, may be relevant to protect a purchaser who then justifiably assumes

1. The Second Circuit, *Golden v. Garafalo,* 678 F.2d 1139 (2d Cir.1982), the Third Circuit, *Ruefenacht v. O'Halloran,* 737 F.2d 320 (3d Cir. 1984), the Fourth Circuit, *Coffin v. Polishing Machines, Inc.,* 596 F.2d 1202 (4th Cir.1979), the Fifth Circuit, *Daily v. Morgan,* 701 F.2d 496 (5th Cir.1983), and the Eighth Circuit, *Cole v. PPG Industries, Inc.,* 680 F.2d 549 (8th Cir.1982), have rejected the sale of business doctrine. The

Tenth Circuit, *Christy v. Cambron,* 710 F.2d 669 (10th Cir.1983), and the Eleventh Circuit, *King v. Winkler,* 673 F.2d 342 (11th Cir.1982), support the Seventh Circuit's view. The Supreme Court has granted a writ of certiorari in *Seagrave Corp. v. Vista Resources, Inc.,* 696 F.2d 227 (2d Cir.1982), *appeal after remand,* 710 F.2d 95 (1983), in which the Second Circuit reaffirmed its rejection of the sale of business doctrine.

that the federal securities laws apply. 421 U.S. at 850–51, 95 S.Ct. at 2059–60. The *Forman* Court did not indicate, however, that when a transaction involves an instrument possessing the common characteristics of corporate stock, the economic reality of the transaction should be disregarded. Thus, although the stock in *Frederiksen* had the common characteristics of corporate stock, this court applied the *Forman* economic reality test and determined that the transaction did not implicate federal securities laws. A purchaser who contracts to buy an entire business with the intent to operate and control that business is in a position quite different from investors who buy stock in businesses about which they may know nothing other than the information they get from the businesses or investment managers. The securities laws are intended to protect the latter group. The former group does not need the protection.[2] *See Golden,* 678 F.2d at 1146 (recognizing the overbreadth of the Securities Acts); *id.* at 1147–50 (Lumbard, J., *dissenting* ).

■ As we have recognized, a key element of an "investment" is that the investor relies on other persons to produce profits. *Emisco Industries, Inc. v. Pro's, Inc.,* 543 F.2d 38 (7th Cir.1976); *see Frederiksen,* 637 F.2d at 1153. The rebuttable presumption stated in *Sutter* that a purchase resulting in control of a business is not an investment implicating federal securities laws stems from our recognition that a purchaser who buys control of a business likely will exercise that control. The rebuttable presumption thus is an element of the third prong of the economic reality test. A purchaser who acquires more than fifty percent of the stock of a business has the power to control the business. If the purchaser acquires the stock with the intention

of exercising the power of control, then that purchaser is not investing with the expectation that any profits will be derived from the entrepreneurial or managerial efforts of others. A 91-percent stockholder or a 51-percent stockholder who intends to assert his power may be in a position similar to the purchaser of 100 percent of a business who takes the managerial controls. If those purchasers intend to manage the businesses and in their transactions had the power of contract to protect themselves, then federal securities law should not apply to the transaction for it is, in reality, not an investment.

The rebuttable presumption is a logical starting point for analysis of a transaction. Although the economic reality of a transaction depends on the circumstances of that transaction, common sense indicates that a purchaser generally will pay the premium for, and acquire the responsibility of, a controlling interest in a business only with the intention of exercising that control. *Sutter,* 687 F.2d at 203. Conversely, a purchaser of a minority interest in a business in every case faces at least the possibility that others will exert some control in the business. The presumption thus draws a sound distinction between a controlling interest and lesser holdings.

A 49-percent stockholder who acquires an additional two percent of the business's stock may not intend to exercise control of the business. A 49-percent stockholder who buys an additional forty percent of the business's stock also may intend to leave essential management decisions[3] to others, though this seems at least improbable. The circumstances of each transaction will become apparent to the trial court, *see King v. Winkler,* 673 F.2d 342, 346 (11th Cir.1982), which then can determine whether the purchaser is an investor intended for

---

**2.** As noted in *Sutter,* the Supreme Court's decision in *Marine Bank v. Weaver,* 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982), also strongly supports the rationale underlying the sale of business doctrine. The *Marine Bank* Court ruled that a bank certificate of deposit was not a security despite the literal applicability of Section 78c(a)(10), because the purchasers of those certificates are "abundantly protected

under the federal banking laws." *Id.* at 558–59, 102 S.Ct. at 1224–25.

**3.** *See Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973).

the protections of the federal securities laws. *Marine Bank v. Weaver,* 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982); *Sutter,* 687 F.2d at 201.

■ The facts of this case generally are uncontested. We agree with the district court that Sutter bought seventy percent of Happy Radio in order to run the business as he saw fit rather than as an investment for others to manage. Sutter's testimony indicates that he immediately elected himself president of Happy Radio to assert control over the management of the radio station Happy Radio operated. Sutter bought the large block of shares specifically so that he could control the station. He was prepared at the outset of the transaction to make whatever policy decisions and hire and replace whichever employees were necessary to run the radio station properly. His exercise of influence was not merely a result of a belated discovery that the radio station was failing; instead, he worked from the beginning to establish and maintain a profitable enterprise. No one else in the business, including his partner, was in the position to exercise control without Sutter's consent. Sutter made most essential management decisions.

The record clearly reveals that Sutter bought his shares in Happy Radio to acquire and operate a business enterprise rather than merely to make an investment in an operation for others to manage. The federal securities laws do not apply to this type of transaction. Thus, the district court correctly dismissed count one of Sutter's complaint.[4]

## II

■ Sutter's other argument is that the district court erred in dismissing his state and common law claims. Because the district court did not have subject matter jurisdiction over Sutter's federal law allegations, the court correctly concluded that it did not have pendent jurisdiction over his other claims. *Forman,* 421 U.S. at 860 n. 27, 95 S.Ct. at 2064 n. 27; *Frederiksen,* 637 F.2d at 1154.

■ Sutter argues that the court incorrectly ruled that there was no diversity between the parties to support federal jurisdiction. Sutter was a citizen of Illinois at the time this suit was filed. The district court concluded that the defendants also were Illinois citizens at that time. The facts are not in dispute. The decision rests on the district court's conclusion that the defendants' ties with Illinois and Defendant Egbert Groen's testimony indicated that the defendants intended to remain citizens of Illinois despite spending a substantial amount of time in California. Our review of these district court findings is quite narrow. *Julien v. Sarkes Tarzian, Inc.,* 352 F.2d 845, 848 (7th Cir.1965). The record amply supports the district court's conclusion that the defendants intended to remain citizens of Illinois. Among other facts, the defendants were lifelong residents of Illinois, maintained substantial bank accounts in Illinois, voted in Illinois, pay only Illinois (and federal) income taxes, and intended to purchase a condominium in Illinois to replace the older house they sold. In addition, Egbert Groen testified that he and his wife stayed in California principally because he was ordered by doctors to avoid harsh Illinois winters after a heart attack in 1974. We affirm the district court's decision to dismiss Sutter's state law claims for want of diversity jurisdiction.

AFFIRMED

---

**4.** Sutter also argues that the Supreme Court's ruling in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed.2d 939 (1946), requires the district court to accept jurisdiction of his suit and rule on the merits rather than dismissing for lack of jurisdiction. We disagree. The district court has the responsibility to determine the existence of subject matter jurisdiction and to gather the facts necessary to make that determination. *See Williamson v. Tucker,* 645 F.2d 404, 412–14 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The law of this circuit stated in *Frederiksen* and *Sutter* is that buying control of a business with the intent to exercise the control is not within the purview of the Securities Acts. Sutter's claim clearly was foreclosed if he intended to control Happy Radio. Sutter's intent thus was a threshold issue relating to jurisdiction and not to his substantive claims of misrepresentation and fraud. *See id.* at 415–16.