GOULD *v.* RUEFENACHT ET AL.

No. 84–165.   Argued March 26, 1985—Decided May 28, 1985

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, REHNQUIST, and O'CONNOR, JJ., joined. STEVENS, J., filed a dissenting opinion, *ante*, p. 697.

*Robert C. Epstein* argued the cause for petitioner. With him on the brief were *Dean A. Gaver* and *Joseph J. Fleischman*. *Robert J. Kelly* filed a brief for O'Halloran, as respondent under this Court's Rule 19.6, urging reversal.

*Peter S. Pearlman* argued the cause for respondent Ruefenacht. With him on the brief was *Jeffrey W. Herrmann*.

*Daniel L. Goelzer* argued the cause for the Securities and Exchange Commission as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Lee, Deputy Solicitor General Claiborne, Paul Gonson, Jacob H. Stillman,* and *Rosalind C. Cohen.*

JUSTICE POWELL delivered the opinion of the Court.

This case presents the question whether the sale of 50% of the stock of a company is a securities transaction subject to the antifraud provisions of the federal securities laws (the Acts).

I

In 1980, respondent Ruefenacht (hereafter respondent) purchased 2,500 shares of the stock of Continental Import & Export, Inc., an importer of wine and spirits, from Joachim Birkle. Birkle was Continental's president and had owned 100% of the company's stock prior to the time of the sale. The 2,500 shares, for which respondent paid $250,000, represented 50% of Continental's outstanding stock.

According to respondent, he purchased the stock in reliance on financial documents and oral representations made

by Birkle; Christopher O'Halloran, a certified public accountant; and petitioner Gould, Continental's corporate counsel. Part of the consideration for the deal was a promise by respondent that he would participate in the firm's management. The record reveals that he helped solicit contracts for the firm, participated in some hiring decisions, signed a banking resolution so that he could endorse corporate checks in Birkle's absence, and engaged in other more minor pursuits. All the while, however, respondent remained a full-time employee of another corporation, and his actions on behalf of Continental were at all times subject to Birkle's veto.

After respondent paid $120,000 of the stock's purchase price, he began to doubt the accuracy of some of the representations made to him by Birkle and others. Respondent subsequently filed this suit,[1] alleging violations of §§ 12(2) and 17(a) of the Securities Act of 1933 (1933 Act), 15 U. S. C. §§ 77*l*(2), 77q. He also alleged violations of § 10(b) of the Securities Exchange Act of 1934 (1934 Act), 15 U. S. C. § 78j(b), and Rule 10b–5, 17 CFR § 240.10b–5 (1984). The District Court granted summary judgment for the defendants, concluding that the stock respondent purchased was not a "security" within the meaning of § 3(a)(10) of the 1934 Act, 15 U. S. C. § 78c(a)(10), and § 2(1) of the 1933 Act, 15 U. S. C. § 77b(1). Finding that respondent intended to manage Continental jointly with Birkle, the court concluded that the sale of business doctrine prevented application of the Acts.

The United States Court of Appeals for the Third Circuit reversed. *Ruefenacht* v. *O'Halloran*, 737 F. 2d 320 (1984). It ruled that the plain language of the Acts' definitions of "security" included the stock at issue here, and it disagreed with

---

[1] The complaint named as defendants O'Halloran, Birkle, and Continental, as well as petitioner Gould. Birkle and Continental defaulted for failure to appear. O'Halloran is a respondent under this Court's Rule 19.6 and filed a brief urging that the decision of the Court of Appeals be reversed.

the District Court's conclusion that the sale of business doctrine must be applied in every case to determine whether an instrument is a "security" within the meaning of the Acts. Because the Courts of Appeals are divided over the applicability of the sale of business doctrine to sales of stock arguably transferring control of a closely held business, we granted certiorari. 469 U. S. 1016 (1984). For the reasons stated in our decision announced today in *Landreth Timber Co.* v. *Landreth, ante,* p. 681, we now affirm.

## II

In *Landreth,* we held that where an instrument bears the label "stock" and possesses all of the characteristics typically associated with stock, see *United Housing Foundation, Inc.* v. *Forman,* 421 U. S. 837, 851 (1975), a court will not be required to look beyond the character of the instrument to the economic substance of the transaction to determine whether the stock is a "security" within the meaning of the Acts. The instruments respondent purchased were called "stock," and the District Court ruled that they possessed all of the characteristics listed by *Forman* that are usually associated with traditional stock. App. 50a. As we noted in *Landreth, ante,* at 687, the sale of stock in a corporation is typical of the kind of transaction to which the Acts by their terms apply. We conclude that the stock purchased by respondent is a "security" within the meaning of the Acts, and that the sale of business doctrine does not apply.

## III

Aside from the language of the Acts and the characteristics of the instruments, there are sound policy reasons for rejecting the sale of business doctrine as a rule of decision in cases involving the sale of traditional stock in a closely held corporation. As petitioner acknowledges, see Brief for Petitioner 27, application of the doctrine depends primarily in each case on whether control has passed to the purchaser.

See, *e. g., Sutter* v. *Groen,* 687 F. 2d 197, 203 (CA7 1982); *King* v. *Winkler,* 673 F. 2d 342, 345 (CA11 1982); *Frederiksen* v. *Poloway,* 637 F. 2d 1147, 1148 (CA7), cert. denied, 451 U. S. 1017 (1981). Control, in turn, may not be determined simply by ascertaining what percentage of the company's stock has been purchased. To be sure, in many cases, acquisition of more than 50% of the voting stock of a corporation effects a transfer of operational control. In other cases, however, even the ownership of more than 50% may not result in effective control. In still other cases, *de facto* operational control may be obtained by the acquisition of less than 50%. These seemingly inconsistent results stem from the fact that actual control may also depend on such variables as voting rights, veto rights, or requirements for a supermajority vote on issues pertinent to company management, such as may be required by state law or the company's certificate of incorporation or its bylaws. See *Golden* v. *Garafalo,* 678 F. 2d 1139, 1146 (CA2 1982) ("In 'economic reality,' considerably less than 100%, and often less than 50%, of outstanding shares may be a controlling block which, when sold to a single holder, effectively transfers the power to manage the business"); *King* v. *Winkler, supra,* at 346 (application of the sale of business doctrine "is not [merely] a function of numbers"). Whether control has passed with the stock may also depend on how involved in management the purchaser intends to be, see *Landreth, ante,* at 695–696. Therefore, under respondent's theory, the Acts' applicability to a sale of stock such as that involved here would rarely be certain at the time of the transaction. Accord, Hazen, Taking Stock of Stock and the Sale of Closely Held Corporations, 61 N. C. L. Rev. 393, 406 (1983). Rather, it would depend on findings of fact made by a court—often only after extensive discovery and litigation.

Application of the sale of business doctrine also would lead to arbitrary distinctions between transactions covered by the Acts and those that are not. Because applicability of the

Acts would depend on factors other than the type and characteristics of the instrument involved, a corporation's stock could be determined to be a security as to the seller, but not as to the purchaser, or as to some purchasers but not others.[2] Likewise, if the same purchaser bought small amounts of stock through several different transactions, it is possible that the Acts would apply as to some of the transactions, but not as to the one that gave him "control." See *Ruefenacht* v. *O'Halloran*, 737 F. 2d, at 335. Such distinctions make little sense in view of the Acts' purpose to protect investors. Moreover, the parties' inability to determine at the time of the transaction whether the Acts apply neither serves the Acts' protective purpose nor permits the purchaser to compensate for the added risk of no protection when negotiating the transaction.

## IV

We conclude that the stock at issue here is a "security," and that the sale of business doctrine does not apply. The judgment of the United States Court of Appeals for the Third Circuit is therefore

*Affirmed.*

[For dissenting opinion of JUSTICE STEVENS, see *ante*, p. 697.]

---

[2] For example, although the sale of all of a corporation's stock to a single buyer by a single seller would likely not constitute the sale of a security under the sale of business doctrine as to either party, the same sale to a single buyer by several sellers, none of whom exercised control, would probably be considered to be a securities transaction as to the sellers, but not as to the buyer. See *Ruefenacht* v. *O'Halloran*, 737 F. 2d 320, 335, and n. 36 (CA3 1984); *McGrath* v. *Zenith Radio Corp.*, 651 F. 2d 458, 467–468, n. 5 (CA7), cert. denied, 454 U. S. 835 (1981); Seldin, When Stock is Not a Security, 37 Bus. Law. 637, 679 (1982).