Ronald M. RODEO, et al.,
Plaintiffs-Appellants,

v.

R. Dean GILLMAN, et al.,
Defendants-Appellees.

No. 85–1310.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1985.

Decided April 3, 1986.

Arthur T. Susman, Joseph Susman & Myers, Chicago, Ill., for plaintiffs-appellants.

John F. Early, Early, Collison Tousey & Regan, Elgin, Ill., for defendants-appellees.

Before BAUER, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiffs' investment group purchased limited partnership interests in certain Illinois apartment buildings. At the time they purchased their limited partnership shares, plaintiffs also acquired an option to buy out the general partners. Several years later, plaintiffs became disenchanted with the deal and brought suit against the brokers that had arranged the investment, the general partners who managed the apartments and the individuals who originally sold the property, alleging violations of the federal securities laws, RICO and the Illinois Blue Sky Act. The district court granted summary judgment for the defendants, concluding that by contemporaneously acquiring an option to buy out the general partners and a limited partnership interest, plaintiffs acquired enough control to take their interest out of the category of "security" under federal law. We vacate and remand.

In the fall of 1980, defendant R. Dean Gillman, a real estate broker, informed plaintiffs of their opportunity to invest as limited partners in two 24-unit apartment buildings in Aurora, Illinois. After reviewing information concerning the management of the apartments and the financial status of the investment, plaintiffs decided to invest. On November 1, 1980, plaintiffs signed four agreements. First they entered into a joint venture agreement with one another agreeing to be limited partners in the apartment. Next, they signed an agreement with the selling limited partners

to purchase all limited partnership interests in the buildings. They entered into a third agreement with defendant Koenig & Strey, the firm of the general partners, which gave plaintiffs an option to purchase the general partnership interests upon paying $20,000 and repaying all loans which the general partners had made to the limited partnership. That agreement also provided that if plaintiffs had not exercised their option by June 1984, the general partners could, at their option, sell their interests to the plaintiffs for the same price. Plaintiffs signed a final agreement with the general partners that the general partners would have sole responsibility for managing the investment.

In the fall of 1981, Gillman contacted plaintiffs and urged them to exercise their option to purchase the general partnership interests. In January 1982, plaintiffs purchased these interests and shortly thereafter retained Gillman to manage the apartments. In 1983, plaintiffs' counsel informed them that the purchase of the limited partnership units was voidable under the Illinois Blue Sky Act. Believing that material misrepresentations and omissions had been made during the negotiation of their limited partnership contracts, plaintiffs filed a 12-count suit in the district court for the Northern District of Illinois.

Plaintiffs' suit claimed violations of the Securities Acts of 1933, 15 U.S.C. § 77a *et seq.*, and 1934, 15 U.S.C. § 78a *et seq.*, and of RICO, 18 U.S.C. § 1961 *et seq.* Plaintiffs' case also included claims under the Illinois Blue Sky Act and Illinois common law which were brought before the court under its pendent jurisdiction. Both sides then filed for summary judgment. The court concluded that fundamental to its jurisdiction over the case was the requirement of a finding that plaintiffs had purchased a security. Defendants contended that the interests were not a security because, while plaintiffs were nominally limited partners, their option to purchase at will actually gave them ultimate control over the management of the apartments. Defendants noted that the plaintiffs agreed to contribute to expenses for tax, accounting and legal fees—an arrangement which was inconsistent with a mere limited partner's role. Similarly, defendants noted that they could transfer certain cost burdens to the plaintiffs, a circumstance which was inconsistent with a limited partner's limited liability. The deal was meant to transfer control, defendants argued, but was structured as a limited partnership in order to keep in force the favorable interest rates provided by the original owner's mortgage. The terms of the mortgage allowed for its becoming due in full in the event of a transfer of ownership.

The district court awarded the defendants summary judgment. While it did not address defendants' specific allegations or make a specific finding that the limited partnership deal was a sham transaction, it concluded that plaintiffs' interests were not in the nature of a security because of the option to purchase. The court stated that, "This mandatory buy-sell agreement was part of the total buy-out transaction and it gave the plaintiffs total control at any time they wished to exercise it. This control is too great to fall within the confines of the third prong of the *Howey-Forman* test [for determining whether an interest is a security.]" The court concluded that "looking at the economic reality and not the name appended to the party ... we see that plaintiffs had ultimate control and therefore do not fit within the status of limited partners."

Plaintiffs dispute defendants' characterization of their motives in entering into the transactions. They note that they did not assume actual control for two years and point out that certain conditions had to be met before they could replace the general partners. Because we believe that certain issues of material fact appear to remain in dispute, we find this an inappropriate case for summary judgment.

## I

"[S]ummary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and the mov-

ing party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). "For the purpose of determining whether any material fact remains disputed, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Fitzsimmons v. Best,* 528 F.2d 692, 697 (7th Cir.1976) *quoting United States v. Diebold Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). If the evidence is subject to conflicting interpretations, or if reasonable people might differ as to its significance, summary judgment is not appropriate. *See Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984).

In reviewing an appeal of a grant of summary judgment, this court must determine whether the district court correctly determined that no material facts remained in dispute and whether, even if no facts are disputed, the court correctly interpreted the federal securities laws.

## II

In drafting the securities laws, Congress expected the term "security" to be read broadly so as to extend to the many types of instruments purchased for investment. *See United Housing Association v. Forman,* 421 U.S. 837, 847, 95 S.Ct. 2051, 2057, 2058, 44 L.Ed.2d 621 (1975). The issue here is whether the limited partnership interest is an "investment contract" under the relevant statutes. In *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed.2d 1244 (1946), the Supreme Court articulated a three-part test for determining when a transaction involved an investment contract:

> An investment contract, for purposes of the Securities Acts, means a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or third party.

In the instant case, the district court determined that plaintiffs failed to satisfy the third prong of the *Howey* test—that profits accrue solely from the efforts of others—

because plaintiffs' option contract enabled them, at will, to "usurp the managerial efforts of Koenig & Strey," the general partners.

The third prong of the *Howey* test has been the most problematic. Courts have eschewed a rigid interpretation, concluding that complete passivity is not required for an individual to be an investor. *See Landreth Timber Co. v. Landreth,* —— U.S. ——, 105 S.Ct. 2297, 2305, 85 L.Ed.2d 692 (1985) ("We cannot agree with respondents that the acts were intended to cover only 'passive investors' and not privately negotiated transactions involving the transfer of control to entrepreneurs."); *Gould v. Ruefenacht,* —— U.S. ——, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985). While the transfer of some control has not prevented courts from finding a security, courts have also held that if a transaction is designed primarily to transfer control to the purchaser, the deal is commercial and outside the ambit of the securities laws. *See Frederiksen v. Poloway,* 637 F.2d 1147, 1148 (7th Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 1017, 69 L.Ed.2d 389 (1981); *Emisco Industries, Inc. v. Pro's, Inc.,* 543 F.2d 38, 41 (7th Cir.1976) ("The transaction involved nothing more than a note used as a cash substitute in the purchase of property. Hence, the note did not constitute 'a security' within the meaning of the 1934 Securities Act on which plaintiffs premised federal jurisdiction.") There remains a substantial gray area for courts to explore in determining when actual or potential control is sufficient to remove a transaction from the jurisdiction of the federal courts under the securities laws.

## III

Generally, limited partnership interests satisfy the *Howey* criteria. As the Ninth Circuit said in *SEC v. Murphy,* 626 F.2d 633, 640–41 (1980), "[A] limited partnership generally is a security ... because, by definition, it involves investment in a common enterprise with profits to come solely from the efforts of others." *See SEC v. Holshuch,* 694 F.2d 130, 137 (7th Cir.1982).

A limited partnership interest has been found to constitute a security even where there was an accompanying general partnership interest. In *Hirsch v. DuPont*, 396 F.Supp. 1214 (S.D.N.Y.1975), *aff'd* 553 F.2d 750 (2d Cir.1977), plaintiffs purchased both limited and general partnership interests in the DuPont Company. Later, plaintiffs believed that they had been defrauded into paying too much for their interests. They sued under the federal securities acts. Defendants argued that plaintiffs' right to actively share in the management of the corporation negated any claimed interest in securities. The court disagreed, determining that plaintiffs' limited partnership interests could be considered separately from the general partnership interests purchased at the same time. These limited partnership shares were securities, the court held, "because limited partners must, by statute, rely solely on the efforts of others for their profit." 396 F.Supp. at 1228.

*Frazier v. Manson*, 651 F.2d 1078 (5th Cir.1981) is another case where a plaintiff had both limited and general partnership interests, there in a real estate investment. The *Frazier* court found that the limited partnership interests were not securities. The *Frazier* court distinguished *Hirsch* on the ground that Frazier was first a partner in the general partnership and only later acquired his limited partnership shares whereas the *Hirsch* plaintiffs were limited partners from the outset.

We believe that the facts of this case more closely parallel *Hirsch* than *Frazier*. Just as the *Hirsch* plaintiffs negotiated their limited and general partnership interests simultaneously, so plaintiffs here negotiated their limited partnership contract and signed their option contract at the same time. The *Rodeo* plaintiffs would actually seem to make a better case for a separable limited partnership interest than did the *Hirsch* plaintiffs. Here, plaintiffs' option contract was made with different parties than was their limited partnership contract. Whereas the *Hirsch* plaintiffs had an actual ownership interest and voice in management, the *Rodeo* plaintiffs' interest was merely potential. While the option

gave them the power to assume control, the option had to be exercised before that control became actual. One could envision a scenario under which plaintiffs might never have assumed control. Had they not exercised their option by 1984, defendants could have forced plaintiffs to purchase the interest. But there is nothing in the record indicating that the defendants were under any compulsion to require plaintiffs to exercise their purchase option and, under certain circumstances, defendants might never have required plaintiffs to purchase. Moreover, to exercise their option, plaintiffs had to do more than merely request control. They had to pay $20,000 and repay any loans made by the general partners to the limited partnership. These loans might have been substantial.

■ Finally, plaintiffs' argument that they lacked control over the apartment buildings is strengthened by the fact that they remained limited partners for two years before buying out the general partners. While defendants argue that plaintiffs had the power to assert control at any time, there is no evidence in the record showing that they in fact exercised any control over management during the two years before exercising their option. Potential managerial control (at least as conditioned here)—even if easily assumed—is not enough to take a limited partnership out of the reach of the securities laws. Therefore, the district court was incorrect to grant summary judgment merely because this potential control existed.

### IV

■ We have concluded that a limited partnership does not stop being a security merely because it is accompanied by an option to purchase. Defendants, however, argue that plaintiffs intended not to become limited partners in the units but to purchase the units themselves and that the deal was structured as a limited partnership in an elaborate ruse to preserve the original mortgage financing. At the time plaintiffs and defendants negotiated their

deal, interest rates had risen well above the 10% rate provided in the original mortgage. As evidence that this was not really a limited partnership, defendants note that the Amended Limited Partnership Agreement (Defendants' Book of Exhibits, Exhibit 0, at 4) allows the general partners to require the limited partners to purchase additional partnership units whenever they deem it necessary. In practice, defendants contend, this eliminated the limited partners' limited liability because, whenever faced with a need for funds, the general partners could secure capital merely by requiring the limited partners to purchase more shares. The agreement also holds the general partnership harmless for its negligent acts and omissions. This seems uncharacteristic of most limited partnership agreements. Similarly uncharacteristic are the general partners' priority in distributions and the requirement that the limited partners pay certain taxes, accounting and legal fees. The trial record contains an affidavit from John Brittain, an attorney who negotiated on behalf of both parties, stating that plaintiff's motive was to purchase the property. (Defendants Book of Exhibits, Exhibit AA). Plaintiffs' affidavit disputes this and argues that they were not fully aware of their rights under the option until well after they had become limited partners. (Supplemental Affidavit of Alan Devereaux, Appendix to Brief of Plaintiffs-Appellants, at 104.).

If the interest involved here were not in substance a limited partnership but instead resulted from a sham transaction intended to disguise a purchase, it presumably would not be within the federal securities laws. The district court apparently did not make any findings whether the interest before us was the product of a sham transaction. Since the parties dispute this question of fact, we do not believe it appropriate for this court to determine the issue on the basis of the documents before us. This is not to say that the existence of a sham transaction may not be demonstrable in

some further attempt at summary judgment or at trial. We therefore vacate the district court's award of summary judgment and remand for further proceedings not inconsistent with this opinion.