Martin SULKOW, Plaintiff-Appellant,

v.

CROSSTOWN APPAREL INC., Dana Linden & Michael Swartz, Defendants-Appellees.

No. 119, Docket 86–7276.

United States Court of Appeals, Second Circuit.

Submitted Oct. 3, 1986.

Decided Dec. 10, 1986.

Sulkow, Birnbach & Jasilli, New York City (Howard R. Birnbach, of counsel), for plaintiff-appellant.

Kulak & Kulak, New York City (Barnett L. Kulak, Andrew H. Kulak, Charles Zolot, New York City, of counsel), for defendants-appellees.

Before KAUFMAN, KEARSE, and ALTIMARI, Circuit Judges.

KEARSE, Circuit Judge.

Plaintiff Martin Sulkow appeals from so much of a judgment of the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge*, as dismissed his complaint seeking damages from defendants Crosstown Apparel, Inc. ("Crosstown"), Dana Linden, and Michael Swartz for violation of Rule 10b–5, 17 C.F.R. § 240.10b–5 (1986), promulgated un-der the Securities Exchange Act of 1934 ("1934 Act" or "Act"), 15 U.S.C. §§ 78a–78kk (1982), on account of defendants' alleged fraud in connection with the sale to him of shares of Crosstown. The court dismissed this claim pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted under Rule 10b–5, principally because the complaint failed to allege that any Crosstown shares were actually issued to Sulkow. The court declined to grant Sulkow leave to replead because at oral argument he admitted that Crosstown shares had never been issued to him. On appeal, Sulkow contends that the district court erred in ruling that the absence of the issuance of a stock certificate foreclosed his federal securities fraud claim. We agree, and we therefore vacate the judgment and remand for further proceedings.

## I. BACKGROUND

### A. *The Complaint*

The complaint included the following allegations. In February 1984, Linden and Swartz, each a major stockholder in Crosstown, represented to Sulkow that for the sum of $10,000 Sulkow could acquire one-third of the corporate stock of Crosstown and become a director of the company, if he would also act as a factor for corporate billings up to $25,000, "consistent with [his] independent business judgment as to the prudence of each billing or invoice to be factored." Linden and Swartz also represented that Sulkow would earn and draw a salary from Crosstown. In addition, defendants "represented that they had the expertise to manufacture garments necessary to conduct the business and also that they had entry to sufficient buying situations and that they had pending orders for goods." The complaint alleged that certain of these representations were made by "telephone, an instrumentality of interstate commerce."

In reliance on these representations, Sulkow invested $10,000 for the purchase of shares in Crosstown. Sulkow attached to his complaint a copy of an apparently un-

dated document signed by Sulkow, Linden, and Swartz, bearing the heading "Memorandum of Shareholders' Agreement.—three equal shareholders" (hereinafter "Shareholders' Agreement"). The Shareholders' Agreement, which listed a $10,000 "capital investment" from Sulkow, provided, *inter alia*, that "[s]tock shares will bear a legend that they may not be transferred, encumbered, pledged or otherwise disposed of unless received back by the corporation subject, subject [*sic*] to a shareholder's [*sic*] agreement," and that "[t]he agreement shall contain a reasonable buyout provision as well as estate considerations."

According to the complaint, each of defendants' representations was knowingly false and was made pursuant to a plan to induce Sulkow to purchase Crosstown securities and to deprive him of those shares and of the benefits of his bargain. Pursuant to their plan, defendants refused to pay Sulkow any salary, they sought to have him act as a factor for all transactions of the corporation regardless of his judgment as to their prudence, and they removed him as a director in September 1985. Sulkow alleged that defendants' actions constituted a violation of Rule 10b–5, as well as a violation of the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1964 (1982), and breached various common-law and state-law duties to him.

Defendants moved to dismiss the complaint for failure to state a claim and for lack of subject matter jurisdiction, and asked the court to impose sanctions on Sulkow pursuant to Fed.R.Civ.P. 11 for bringing a frivolous lawsuit.

In an oral ruling, the district court dismissed the complaint for failure to state a claim. With respect to the claim under Rule 10b–5, the court found the complaint deficient because "there can be no federal securities claim without securities," and

> [n]owhere in the complaint does the plaintiff state that any securities were actually issued by Crosstown or that the plaintiff purchased such securities. In-

deed, the defendants state that they know of no shares having been issued and that it was the responsibility of the plaintiff to cause the issuance of the shares, he being an attorney.

> The complaint, therefore, is deficient in pleading a securities violation under Rule 10b–5 of the securities laws.

(Transcript of Oral Decision, dated March 20, 1986, at 4.) The court denied Sulkow leave to replead because

> on oral argument the plaintiff's counsel acknowledge[d] that they never got around to issuing shares in this corporation. Upon that concession, there seems to be no purpose in allowing a repleading which would state in effect the plaintiff's claim that when one invests in a corporation with the intent that securities be issued, it is a federal securities claim even though the securities are never issued.

*Id.*

Concluding that the complaint also failed to state a claim under RICO and that there was no other basis for federal jurisdiction, the court dismissed the complaint in its entirety. Judgment was entered accordingly. The court did not impose sanctions pursuant to Rule 11 as requested by defendants.

### B. *The Issues on Appeal*

On this appeal, Sulkow challenges only the dismissal of his claim under Rule 10b–5. Defendants urge us to uphold the dismissal of this claim either on the ground adopted by the district court or on the ground that the interest conveyed to Sulkow was not a security. They also ask us to reverse the district court's failure to award them sanctions pursuant to Rule 11.

The issue of sanctions is not properly before us since defendants did not cross-appeal from the denial of their Rule 11 motion. As to the issues properly raised in connection with Sulkow's appeal, we conclude that Rule 10b–5 encompasses fraud in connection with a contract to purchase an unissued security and that what Sulkow

contracted to purchase was a security within the meaning of the 1934 Act. Accordingly, we vacate so much of the judgment as dismissed the Rule 10b–5 claim and remand for further proceedings.

## II. DISCUSSION

Rule 10b–5, promulgated under § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), in essence makes it unlawful for any person, using an instrumentality of interstate commerce, to engage in fraud "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. The Act defines "security" to include "any ... stock," 15 U.S.C. § 78c(10), and defines the terms "purchase" and "buy" to "include any contract to buy, purchase, or otherwise acquire," *id.* § 78c(13).

■ The combined effect of these provisions is that Rule 10b–5 prohibits fraud in connection with the purchase of, or in connection with a contract to purchase, stock. Neither the Act nor Rule 10b–5 expresses any requirement that the stock actually have been issued, and we have declined to impose such a requirement. Thus, in *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 558–59 (2d Cir. 1985) ("*Yoder*"), we held that a contract that called for the issuance to the plaintiff, in certain circumstances, of stock in the defendant corporation involved a purchase and sale of securities even though the securities were never issued. *See also Lawrence v. SEC*, 398 F.2d 276, 279–80 (1st Cir.1968) ("Fraudulent representations as to securities not yet issued offer full[ ] ... reason for invoking the protection of the securities laws."); *Stevens v. Vowell*, 343 F.2d 374, 379 (10th Cir.1965) (agreement to form a corporation and distribute stock involves a "purchase" despite defendants' refusal to issue stock). A person who has made material misrepresentations in inducing another to part with something of value for the purchase of a security may not escape liability under Rule 10b–5 simply by refusing to issue a written instrument evidencing the security. *See* H.R.Rep. No. 1838, 73d Cong.2d Sess. 39 (1934) (federal securities statutes were intended to apply "to interests commonly known as 'securities' whether or not such interests are represented by any document or not [*sic* ]").

Thus, we reject the district court's view that if a security allegedly purchased by the plaintiff has not been issued there is no claim on which relief can be granted under Rule 10b–5. We also reject the suggestion that there was not a sufficient allegation of purchase. An agreement to purchase is, by definition, a purchase within the meaning of the Act. 15 U.S.C. § 78c(13).

We find no greater merit in defendants' contention that what Sulkow agreed to purchase was not a "security" within the meaning of the Act or the Rule. Defendants' reliance on authorities analyzing whether investment contracts are securities is misplaced since the agreement itself need not be a security for Rule 10b–5 to apply, so long as the interest to be conveyed pursuant to the agreement is a security. *See Yoder*, 751 F.2d at 558–59; *cf. Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.*, 801 F.2d 13, 19–20 (2d Cir.1986) (fraud in connection with agreement to repurchase government securities is fraud in connection with purchase or sale of the underlying securities even if the repurchase agreement itself is not a security). That test is met when the interest conveyed is called "stock" and bears the usual characteristics of stock, *i.e.*, "(i) the right to receive dividends contingent upon an apportionment of profits; (ii) negotiability, (iii) the ability to be pledged or hypothecated; (iv) the conferring of voting rights in proportion to the number of shares owned; and (v) the capacity to appreciate in value." *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 2302, 85 L.Ed.2d 692 (1985) ("*Landreth*").

■ We have no difficulty in determining that the complaint sufficiently alleged the purchase of an interest that meets the *Landreth* test. The complaint alleged that Sulkow agreed to purchase "corporate stock" in Crosstown, and the Shareholders' Agreement, which was attached to the com-

plaint, referred to the "stock shares" to be issued. That agreement, referring to "three equal shareholders," revealed that Crosstown was a for-profit corporation, and it set forth provisions indicating that Sulkow's stock had proportional voting rights, rights to dividends, and the capacity to appreciate.

The fact that Crosstown was a close corporation, with the Shareholders' Agreement envisioning some limitations on the stock's negotiability and pledgeability, is insufficient to negate the character of the stock as a security. Limitations on the transfer of stock in close corporations are common, but neither the small size of the corporation nor the restrictions on transferability remove such a corporation's stock from the reach of Rule 10b–5. "[T]he [1934 Act] has always been understood to apply to transactions in shares of close ... corporations," *Golden v. Garafalo*, 678 F.2d 1139, 1146 (2d Cir.1982); *see, e.g., Gould v. Ruefenacht*, 471 U.S. 701, 105 S.Ct. 2308, 2310, 85 L.Ed.2d 708 (1985); *Schine v. Schine*, 250 F.Supp. 822, 823 & nn. 5–7 (S.D.N.Y.1966) (Weinfeld, J.) (collecting cases), even though frequently there are some restrictions on the transfer of the stock of such corporations, *see United States v. Rachal*, 473 F.2d 1338, 1343 (5th Cir.) (stock that could only be resold to the issuer at a preformulated price was a security), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2750, 37 L.Ed.2d 154 (1973); *see also Daniel v. International Brotherhood of Teamsters*, 561 F.2d 1223, 1233 (7th Cir. 1977) (dictum) ("Presumably, an investor who purchases ... stock from a close corporation whose shares have restraints on their alienation may still sue for fraud under the securities laws."), *rev'd on other grounds*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). Simply put, when parties implement joint ownership in a profit-making venture through a corporation rather than a partnership, "[h]aving decided to deal in stock, they br[ing] their transaction under the provisions of the federal securities statutes." *Coffin v. Polishing Machines, Inc.*, 596 F.2d 1202, 1204 (4th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979).

For the above reasons, we conclude that the stock that the complaint alleges Sulkow agreed to purchase was a security within the meaning of the 1934 Act and Rule 10b–5. We decline defendants' invitation to reach the contrary conclusion by using the "economic realities" test set forth in cases such as *SEC v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), and *Marine Bank v. Weaver*, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982). Even assuming that application of that test would have the result argued for by defendants, which is by no means clear, the more recent teaching of the Supreme Court suggests that the economic realities test should be used only when the interest in question does "not fit squarely within one of the enumerated kinds of securities listed in the [Act's] definition" of a security. *See Landreth*, 105 S.Ct. at 2304 n. 4. There is plainly no need for resort to the economic realities test where, as here, the transaction concerned stock in a for-profit corporation, " 'the paradigm of a security.' " *Yoder*, 751 F.2d at 558 (*quoting Daily v. Morgan*, 701 F.2d 496, 500 (5th Cir.1983)).

We have considered all of defendants' arguments in support of the decision below and have found them to be without merit.

## CONCLUSION

The judgment of the district court is vacated insofar as it dismissed plaintiff's claim under Rule 10b–5, and the matter is remanded to the district court for further proceedings on that claim. Costs to plaintiff.