Dennis KOVATOVICH, et al.,
Respondents,

v.

R. Colin BARNETT, et al., Appellants.

No. C3-86-2225.

Supreme Court of Minnesota.

June 5, 1987.

Samuel D. Heins, Marshall P. Tanick, Margaret F. Chutich, Minneapolis, for appellants.

John Troyer, Minneapolis, for respondents.

YETKA, Justice.

This appeal comes directly from a decision of the Hennepin County District Court denying a motion for partial summary judgment brought by appellants. The appellants, who were defendants below, sought to have plaintiffs' claim for securities fraud dismissed on the grounds that the Minnesota Securities Act, Minn.Stat. §§ 80A.01–.31 (1986), did not apply to an arms-length, directly negotiated transfer of stock between co-employees and equal shareholders of a closely held corporation. The district court disagreed, but found the issue doubtful and important and had it certified for review by this court.

The question certified to this court is as follows: Does the Minnesota Securities Act (Minn.Stat. §§ 80A.01–.31 (1986)) apply to an arms-length, directly negotiated transaction in which the shareholder interest of an employee and shareholder of a closely held corporation is bought out by a co-employee and co-shareholder?

From 1983 until 1984, appellant R. Colin Barnett and respondent Dennis Kovatovich jointly owned and operated Northstar Fire Protection Company, an engineering and consulting firm based in Minneapolis. Barnett served as Northstar's president and owned 40% of the stock, though voting all 100% pursuant to a voting trust agreement. Kovatovich, as vice-president, was in charge of Northstar's Colorado and California business operations. Kovatovich also owned 40% of Northstar stock. (The remaining 20% was owned by an individual, Mark Tate, who is not involved in this litigation.)

Personal and business disputes arose between Kovatovich and Barnett in 1984 and, in December of that year, Kovatovich resigned from Northstar with the goal of forming his own firm. In a series of meetings, Kovatovich and Barnett subsequently negotiated an arrangement by which Northstar purchased Kovatovich's shares of Northstar stock. Both parties were advised by lawyers and accountants during these negotiations, which concluded with two agreements signed on January 11 and February 1, 1985, specifying the details of the transaction.

In May of 1986, Kovatovich brought this present action against Northstar. Among other claims, Kovatovich alleged that Barnett misappropriated corporate funds while president of Northstar without informing Kovatovich of these transactions while negotiating the purchase of Kovatovich's stock. Kovatovich brought charges of securities fraud based on these alleged factual omissions. Barnett asked for partial summary judgment dismissing any of Kovatovich's claims under Minnesota's securities laws. The trial court denied judgment, but certified to the Minnesota Court of Appeals the aforesaid question as important and doubtful.

Minnesota's securities act prohibits fraudulent practices, misstatements or a failure to disclose material facts in connection with the "offer, sale or purchase of any security." Minn.Stat. § 80A.01 (1986). It is also illegal to "effect any transaction in, or to induce the purchase or sale of any security by means of any manipulative, deceptive or other fraudulent device or contrivance * * *." Minn.Stat. § 80A.03 (1986). A "security" is:

[A]ny note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable shares; investment contract; investment metal contract or investment gem contract; voting trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas or mining right, title or lease or in payments out of production under the right, title or lease; or, in general, any interest or instrument commonly known as a security, or any certificate of interest or participation in, temporary or interim certificate for, receipt for guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Minn.Stat. § 80A.14, subd. 18 (1986).

Northstar undeniably purchased Kovatovich's Northstar stock. Therefore, a literal reading of the securities act would make its strictures against misstatements or omissions of material facts applicable. However, appellants argue that the securities act should not be read literally but, instead, that the arms-length negotiated transfer of Northstar stock from Kovatovich to Barnett should be exempted from securities regulations. The theory justifying such an exception is that securities laws were designed only to protect passive investors; that those actively involved in negotiating to buy or sell a major interest in a small company already have the opportunity and economic leverage to secure the protection against fraud which securities laws guarantee. According to this theory, even though Northstar stock is denominated a security under securities laws, the negotiated purchase of Kovatovich's share would not be covered by those laws because, in economic reality, the shares were neither held nor bought for investment reasons.

The contention that this court should focus on the economic realities of a securities transaction has merit; however, this court has recently considered the issue and has, instead, adopted a literal reading of the securities laws. *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520 (Minn.1986). In *Specialized Tours*, the plaintiff had purchased 100% of the stock of a charter travel agency from its sole owner and then later sued the owner under Minnesota's securities act, claiming there were misrepresentations made in the course of the sale. This court held that the securities laws would be applied to the sale of the travel agency.

Our decision was based on two recent U.S. Supreme Court decisions, *Landreth*

*Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), and, a companion decision, *Gould v. Ruefenacht*, 471 U.S. 701, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985). In *Landreth*, 100% of the stock of a closed corporation was sold to an outside purchaser; in Gould, 50%. Construing federal securities law, whose definition of security is effectively identical to the Minnesota definition, the U.S. Supreme Court rejected the theory that the sale of a corporation consummated through the sale of its stock was not a securities transaction. Instead, *Landreth/Gould* read the securities laws literally.

In *Landreth*, we held that where an instrument bears the label "stock" and possesses all of the characteristics typically associated with stock, a court will not be required to look beyond the character of the instrument to the economic substance of the transaction to determine whether the stock is a "security" within the meaning of the Acts.

*Gould*, 471 U.S. at 704, 105 S.Ct. at 2310 (citation omitted).

In *Specialized Tours*, we indicated our disagreement with the *Landreth/Gould* decisions, noting several legal and policy arguments against applying securities laws to the sale of a business.

(1) the "unless the context otherwise requires" language in Minn.Stat. § 80A.14, subd. 1 (1984) permits a construction that the act does not apply to the sale of a business through a stock transfer when the stock is merely a method of vesting ownership and not the sale of an investment instrument; (2) a holding that a sale of 100 percent of the stock in a business is the sale of a security, while the sale of 100 percent of the assets in a business is not, exalts form over substance; (3) a purchaser of 100 percent of stock in a negotiated face-to-face transaction does not need the protection of the Minnesota Securities Act because the anti-fraud provisions most often implicated in "sale of business" cases can be written into the sales agreement (as was basically done in this case) (4) adequate and parallel state common law causes of action exist to give a remedy for fraud and misrepresentation claims; and (5) most parties to a sale of a business through a 100 percent stock transfer would never contemplate that the Minnesota Securities Act would apply to that type of transaction.

*Specialized Tours*, 392 N.W.2d at 535, n. 12. We also noted our concern over the implications of applying securities laws to transactions involving Minnesota's small corporations.

In passing, we note that if the Act is applicable under the facts of this case, then it is applicable to all arms-length directly negotiated transfers of closely held corporations, including incorporated small businesses and family farms. We question whether the legislature intended, or even contemplated, a result that, even in the absence of intent to defraud, would burden the seller with such punitive-like liability damages.

*Id.* at 535, n. 14.

However, as we held in *Specialized Tours* and reiterate today, we are required to coordinate our interpretation of state securities laws with its federal equivalent. Minn.Stat. § 80A.31 (1986). *Specialized Tours* mandates identifying a stock as a security. We decline to overrule or distinguish this case decided less than a year ago.

We thus answer the certified question in the affirmative.