Joseph GIGLIOTTI and JG Holdings, Inc., Plaintiffs,

v.

Marc MATHYS, Whitecap Inv. Corp., and Brian Rourke, Defendants.

No. Civ.1999–015.

District Court, Virgin Islands, D. St. Thomas and St. John.

Jan. 29, 2001.

W. John Amerling, St. Thomas, U.S.V.I., for the plaintiffs.

J. Daryl Dodson, St. Thomas, U.S.V.I., for the defendants.

## MEMORANDUM

MOORE, District Judge.

This matter is before the Court on defendants' motion to dismiss for lack for federal jurisdiction. The sole basis for federal jurisdiction in the amended complaint filed by plaintiffs Joseph Gigliotti ["Gigliotti"] and JG Holdings, Inc. ["JG Holdings"] [collectively "plaintiffs"] is count one, which alleges that defendants Marc Mathys ["Mathys"], Whitecap Investments, Inc. ["Whitecap"], and Brian Rourke ["Rourke"] [collectively "defendants"] committed fraud in connection with the purchase or sale of a security under section 10b of the Security and Exchange Act of 1934 [the "1934 Act"] and Rule 10b–5 promulgated thereunder. Defendants moved to dismiss, arguing that count one fails to state a claim pursuant to Rules 12(b)(1), (4), (5) and (6) of the Federal Rules of Civil Procedure, and fails to plead fraud with sufficient particularity pursuant to Rule 9 and the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ["PSLRA" or "Reform Act"], 15 U.S.C. § 78u–4.[1]

Finding that count one of plaintiffs' amended complaint fails to meet the pleading standards for securities fraud under Section 10b of the 1934 Act and Rule 10b–5 promulgated thereunder, as modified by the Reform Act, the Court will grant defendants' motion to dismiss for lack of federal jurisdiction.

## I. PROCEDURAL BACKGROUND

During argument on the motion to dismiss, the Court expressed concern that the complaint did not adequately plead a cause of action under the 1934 Act. Plaintiffs responded by referring to additional facts in the Gigliotti affidavit as more particularly supporting plaintiffs' claim of securities fraud and by orally moving for leave to amend the complaint. On October 20, 2000, the Court granted plaintiffs leave to file an amended complaint, which the plaintiffs filed on November 9, 2000. The defendants' motion to dismiss has been decided on the allegations contained in the amended complaint.

## II. FACTS ALLEGED IN THE AMENDED COMPLAINT

According to the amended complaint, Gigliotti was the founder and owner of all outstanding stock of Unicorn Supplies ["Unicorn"], a wholesale and retail lumber business, which operated on St. John from

**1.** At the hearing on the motion to dismiss, defendants abandoned their claim of insufficiency of process or service of process.

1995 to 1998. He was also the founder and sole shareholder of Whitecap, which owned a thirty-year lease on certain property in Cruz Bay, St. John [the "leased premises"], which he planned to develop into a retail shopping center.

In September, 1997, defendant Mathys contacted Gigliotti and requested information about Unicorn after learning that it was for sale. The parties began discussing terms of the sale in November. By April, 1998, Mathys became interested in purchasing Whitecap as well. The parties negotiated the terms of several integrated agreements, including a stock purchase agreement, an assets purchase agreement, and several other agreements [collectively the "integrated agreements"].

Under the stock purchase agreement, Gigliotti would sell all the outstanding stock in Whitecap to Mathys in exchange for one hundred dollars plus $25,000 upon sublease of 10,000 square feet of the leased premises. Gigliotti would further be required to apply for a business license and permits for Whitecap to develop the leased premises. Once Mathys had acquired Whitecap, Unicorn and its sole shareholder, Gigliotti, would convey certain assets of Unicorn, including rights to the name "Unicorn," to Whitecap, pursuant to the assets purchase agreement. Whitecap would also assume certain liabilities of Unicorn and Gigliotti under this and the integrated agreements.

During the negotiation of these agreements, Mathys learned that Unicorn had filed suit against its landlord, Enighed Pond Partners ["EPP"], claiming tort and breach of contract damages in excess of $100,000. Uncertain how this dispute would resolve itself, Mathys and Gigliotti negotiated the terms of a joint defense/common interest agreement, whereby Whitecap would continue the prosecu-

tion of the Unicorn claim in the event the dispute did not settle before the closing of the sale of the Whitecap stock. After the closing, Whitecap would contribute $50,000 towards the prosecution of the claim in exchange for the right to retain all proceeds exceeding $60,000 from any settlement or judgment.

Just before the scheduled closing on Friday, July 24, 1998, the EPP litigation settled for $69,000, and the joint defense agreement became moot. When Mathys learned of the settlement, he allegedly exploded in a rage, screamed and swore at Gigliotti, threatened to sue him, and told him, "This will cost you $20,000." [2] (See amended complaint ¶¶ 16–17.) Mathys then refused to close the deal on the agreed upon terms. Over the weekend, Mathys contacted Gigliotti and told him that he had reconsidered his position and would now close the deal according to the agreed upon terms of the various agreements. The closing occurred in several stages from July 28, 1998 to July 31, 1998.

Plaintiffs allege that Whitecap, once it was under the ownership and control of Mathys, breached a variety of obligations under the integrated agreements, including failure to pay various accounts payable and other assumed liabilities, failure to pay Gigliotti two payments owed him, and failure to pay title insurance and to arrange for the release of escrow funds to plaintiffs. Plaintiffs assert that Mathys never intended to fulfill these obligations, despite his statements to the contrary made just before closing. Plaintiffs proffer as indicators of Mathys' fraudulent intent the post-closing statements of Rourke, who apparently represented Mathys during the course of the parties' dealings, that Mathys was still upset about the EPP settlement because "he made his money suing people all over the world" and he anticipated receiving the proceeds of the EPP liti-

---

**2.** Gigliotti claims that Mathys had previous bragged about how he had litigated his way through transactions and won, and that Mathys, after reviewing detailed information about the EPP litigation, had also expressed his belief that recovery would be substantially in excess of Gigliotti's valuation. Therefore, according to Gigliotti, the $20,000 represents the minimum amount Mathys expected to gain from the EPP litigation.

gation. (*See* amended complaint ¶ 25.) Plaintiffs assert that Mathys' pre-closing statements that he had reconsidered his withdrawal from the deal and had decided to go forward with the closing according to the previously agreed upon terms were materially misleading and were designed to induce Gigliotti to sell the Whitecap stock to Mathys, even though Mathys had no intention of fulfilling the terms of the agreements which constituted the bulk of the consideration for the sale of the stock.

## III. DISCUSSION

The Court will dismiss the case for lack of subject matter jurisdiction. The amended complaint does not sufficiently plead a violation of section 10(b) of the 1934 Act because count one falls short of the heightened pleading standards imposed by the Reform Act and it fails to allege fraud "in connection with" the purchase or sale of a security, as that phrase is used in section 10(b) and in Rule 10b–5 promulgated thereunder.

### A. Jurisdiction

This Court has jurisdiction to consider the motion to dismiss based on the federal securities fraud claim contained in count one of the amended complaint. *See* 28 U.S.C. § 1331. The remaining nine counts raise no federal question and are cognizable here only under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[3]

3. The nine counts are: breach of Stock Purchase Agreement, breach of Assets Purchase Agreement, breach of Consulting and Noncompetition Agreement, breach of Seller's Assignment Agreement, breach of Escrow Agreement, breach of Buyer's Assumption and Indemnification Agreement, fraud, negligent misrepresentation, intentional interference with economical relationships.

4. Pursuant to its section 10(b) rulemaking authority, the Securities and Exchange Commission adopted Rule 10b–5, which provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or

### B. The Reform Act of 1995 Imposes a Heightened Pleading Standard for Claims of Fraud under Rule 10b–5.

■ To state a claim under section 10(b) and Rule 10b–5,[4] a plaintiff must plead the following elements: (1) that a defendant made misstatements or omissions of material fact; (2) with scienter; (3) in connection with a purchase or sale of securities; (4) upon which the plaintiff relied; and (5) plaintiff's reliance was the proximate cause of plaintiff's injury. *See Kline v. First W. Gov't Sec., Inc.,* 24 F.3d 480, 487 (3d Cir.1994). Rule 9(b) of the Federal Rules of Civil Procedure sets forth additional pleading requirements with respect to allegations of fraud, requiring that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV.P. 9(b).

In 1995, Congress enacted the aforementioned Reform Act, which, *inter alia,* provides that

the complaint shall, with respect to each act or omission alleged to violate this chapter, state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2) (emphasis added). "This language ... requires plaintiffs to plead 'the who, what, when, where, and how'" of each act or omission giving rise to a fraudulent state of mind or "scienter".

of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
17 C.F.R. § 240.10b–5 (2000).

*In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534 (3d Cir.1999) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). The Supreme Court has defined scienter as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Reform Act thus heightened Rule 9's standard for pleading scienter in securities fraud cases.[5]

 In securities fraud cases, then, plaintiffs must state with *particularity* facts giving rise to a *strong inference* that the defendant acted with the required scienter. This heightened pleading standard can be satisfied "by alleging facts 'establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior.'" *Advanta,* 180 F.3d at 534–35 (quoting *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 318 n. 8 (3d Cir.1997)). Further, a plaintiff alleging a Rule 10b–5 violation based on untrue or misleading statements

> shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state *with particularity* all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1) (emphasis added). If the complaint fails to meet this or the scienter requirement, "the court shall, on the motion of any defendant, dismiss the complaint...." 15 U.S.C. § 78u–4(b).

The following outline summarizes what a plaintiff must include in his complaint when alleging a Rule 10b–5 violation based on untrue statements or omissions of material fact:

I. Defendant made misstatements or omissions of material fact;[6]

 A. specify each statement alleged to have been misleading,[7]

 B. the reason or reasons why the statement is misleading, and,

 C. if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

II. With scienter (required state of mind);

 A. state with particularity facts ...[8]

 1. Who,[9]

 2. What,

 3. When,

 4. Where, and

 5. How

 B. ... giving rise to a strong inference that the defendant acted with the required state of mind.

 1. establish motive and opportunity, or[10]

 2. set forth facts that constitute circumstantial evidence of either reckless or conscious behavior.

---

**5.** *See Advanta,* 180 F.3d at 531 n. 5 ("Rule 9(b)'s provision allowing state of mind to be averred generally conflicts with the Reform Act's requirement that plaintiffs 'state with particularity facts giving rise to a strong inference' of scienter.... In that sense, we believe the Reform Act supersedes Rule 9(b) as it relates to Rule 10b–5 actions."); *In re Burlington Coat Factory, Sec. Litig.,* 114 F.3d 1410, 1417–18 (3d Cir.1997) (because section 10(b) and Rule 10b–5 are anti-fraud provisions, plaintiffs must generally plead them with particularity required by Rule 9(b) and Reform Act).

**6.** For source of major headings I–V, see *Kline,* 24 F.3d at 487.

**7.** For source of headings I.A–C, see 15 U.S.C. § 78u–4(b)(1).

**8.** For source of headings II.A–B, see 15 U.S.C. § 78u–4(b)(2).

**9.** For source of subheadings II.A.1–5, see *Advanta,* 180 F.3d at 531.

**10.** For source of subheadings II.B.1–2, see *Advanta,* 180 F.3d at 534–35.

III. In connection with a purchase or sale of securities;

IV. Upon which the plaintiff relied; and

V. Plaintiff's reliance was the proximate cause of plaintiff's injury.

## C. Plaintiffs Fail to Meet the Heightened Pleading Standards of 15 U.S.C. §§ 78u–4(b)(1) and (2).

In determining the sufficiency of plaintiffs' cause of action for securities fraud, the Court considers only the factual allegations of the amended complaint. *See* 15 U.S.C. § 78u–4(b)(1) ("the *complaint* shall specify each statement . . ., the *complaint* shall state with particularity all facts. . . .") (emphasis added). For example, plaintiffs allege "[u]pon information and belief" that Mathys "never intended to fulfill his obligations" under the integrated agreements. (*See* amended complaint ¶ 40.) They base this allegation on a "pattern of conduct . . . whereby [Mathys] has failed and refused to honor the commitments" in the integrated agreements, "in addition to . . . charging purchases of inventory to" plaintiffs. (*See id.* ¶ 41.) According to plaintiffs, these actions along with Mathys' "statements prior to closing about his intent and/or ability to fulfill the obligations required of him . . . as well as Mathys' written commitments . . . constitute material, misleading statements prohibited [by securities law]" (*see id.* ¶ 42), and "a scheme to defraud [plaintiffs]" (*see id.* ¶ 43).

Plaintiffs satisfy the first *Kline* element, that is, they sufficiently claim that Mathys made misstatements or omissions of material fact. Plaintiffs specify the statement alleged to have been misleading as follows: after Mathys cancelled the closing, he stated that "he had reconsidered his position and would now close at the agreed upon price." (*See id.* ¶¶ 17–18.) Plaintiffs' asserted reason why the statement was misleading is that it "was calculated to permit Mathys to acquire the stock of Whitecap

under false pretenses that he intended to pay full value" for them, when in fact he had no intention to do so. (*See id.*) "Upon information and belief," plaintiffs allege that Mathys valued the EPP litigation at $20,000, which plaintiffs support with the following particular facts: that Mathys had exploded into rage upon learning that the EPP litigation had been settled, that he screamed and swore at Gigliotti and said, "This will cost you $20,000," and that he threatened to sue Gigliotti. (*See id.* ¶¶ 16–17.) Plaintiffs' complaint therefore satisfies the requirements of 15 U.S.C. § 78u–4(b)(1).

■ Plaintiffs' amended complaint, however, fails the second *Kline* factor, scienter. Although plaintiffs' statement of particular facts—the who, what, when, where, and how [11]—might give rise to an inference that Mathys' intended to defraud plaintiffs when he told them he had reconsidered his position and would go forward with the closing, it certainly does not rise to the "strong inference" required under 15 U.S.C. § 78u–4(b)(2). An inference from plaintiffs' allegations that is at least as plausible is that Mathys simply changed his mind over the weekend and decided to close the deal without the EPP settlement. It is thus just as likely that the claimed later breaches of contract resulted from some post-closing dispute as it is plausible that Mathys never intended to honor the agreements when he signed them.

Given such a tenuous inference of fraud, the Court's mandate is clear: "In any private action arising under this chapter, the court *shall*, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met." 15 U.S.C. § 78u–4(b)(3) (emphasis added). Count one of the amended complaint fails to meet the scienter requirements of paragraph (2) of 15 U.S.C. § 78u–4(b) and will be dismissed.

11. *See* amended complaint ¶¶ 16, 17, 25.

## D. The Alleged Misleading Statements Were Not "in Connection with" the Purchase or Sale of a Security, Nor Could They be Relied upon by Plaintiffs.

Alternatively, Count one fails to satisfy the third *Kline* factor, that is, it does not plead fraud "in connection with" the sale or purchase of a security,[12] as that phrase has come to be defined judicially.[13] The Court of Appeals for the Third Circuit has cautioned "that courts should adopt a case-by-case approach for determining the proper scope of the 'in connection with' requirement," and that "too broad an interpretation of § 10(b) is unwarranted." *See Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 945–46 (3d Cir. 1985) (holding that misrepresentation of credit terms of margin account, however, satisfied "in connection with" language of Rule 10b–5).

Courts have been careful to distinguish mere breaches of contract, where, for example, the failure to supply consideration simply involved the mechanics of payment, from breaches designed to alter the value of the security or consideration therefor. Thus, in an action against a brokerage firm for breach of contract, the Second Circuit Court of Appeals held that

> plaintiffs' claim is nothing more than a garden-variety customer's suit against a broker for breach of contract, which cannot be bootstrapped into an alleged violation of § 10(b) of the Exchange Act, or Rule 10b–5, in *the absence of allegation of facts* amounting to scienter, intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud.

*Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir.1971) (footnotes omitted) (emphasis added).[14]

■ Because Congress' two main concerns when it passed the 1934 Act were manipulation and speculation, a key factor in weeding out cases involving mere breaches of contract is whether the alleged misrepresentations were intended to induce a sale or purchase of a security at the

12. There is no doubt that the stock was a security, even though the sale amounted to 100% of the business. *See Ruefenacht v. O'Halloran,* 737 F.2d 320 (3d Cir.1984), *aff'd Gould v. Ruefenacht,* 471 U.S. 701, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985) (repudiating sale-of-business doctrine, under which some courts previously excepted from the 1934 Act transactions involving purchase of all, or controlling portion, of stock of business).

13. Over the years, courts have refined the Supreme Court's thirty-year-old caution that the scope of "in connection with" should be read "flexibly, not technically and restrictively," to require merely that a plaintiff "suffered an injury as a result of deceptive practices touching [the purchase or] sale of securities." *Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12–13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). For example, the mere involvement of shares of stock does not bring a transaction within Rule 10b–5, unless the value of the securities (or consideration) involved is misrepresented. *See Chemical Bank v. Arthur Andersen & Co.,* 726 F.2d 930, 943 (2d Cir.1984), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984) ("misrepresentation ... not pertaining to the securities themselves" cannot be the basis of a section 10(b) violation); *see also A.T. Brod & Co. v.*

*Perlow,* 375 F.2d 393 (2d Cir.1967) (Rule 10b–5 was aimed at manipulation and deceptive devices employed "in connection with the sale or purchase of any security"); *Bissell v. Merrill Lynch & Co.,* 937 F.Supp. 237, 242 (S.D.N.Y.1996) .("[U]nless the alleged fraud concerns the value of the securities bought or sold, or the consideration received in return, such fraud is not 'in connection with' the purchase or sale of a security within the meaning of Rule 10b–5." (citing *Chemical Bank* )).

14. *See, e.g., Ernst & Co. v. Marine Midland Bank, N.A.,* 920 F.Supp. 58, Fed.Sec.L.Rep. (CCH) ¶ 99235 (S.D.N.Y.1996) (alleged fraud in promising to pay and then refusing to pay were not "in connection with" purchase or sale of securities, because it did not relate to characteristics of particular securities); *Williamsport Firemen Pension Bds. I & II v. E.F. Hutton & Co.,* 567 F.Supp. 140, Fed.Sec. L.Rep. (CCH) ¶ 99268 (M.D.Pa.1983) (misrepresentations regarding method of calculating commissions on certain stock transactions were not made "in connection with" any particular securities within the meaning of section 10(b)).

time of sale or purchase. Thus, although a fraudulent promise made to induce a securities transaction may give rise to a claim under section 10(b), "the failure to carry out a promise made as consideration for a sale of securities ... does not constitute fraud if the promise was made with a good faith expectation that it would be carried out...." *See Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986) (if a specific promise to perform a particular act in the future is part of the consideration for the transfer of securities, a secret contemporaneous intention not to perform that act may violate Section 10(b)).[15]

■ Heeding the Court of Appeals' admonition for a case-by-case approach, this Court concludes that the amended complaint fails to allege fraud "in connection with" the purchase or sale of a security, because the plaintiffs' claim is nothing more than a simple breach of contract unrelated to any inducement for a purchase or sale of securities for speculation or by manipulation, the 1934 Act's twin targets. This conclusion is supported by plaintiffs' failure to satisfy the fourth and fifth *Kline* factors, to wit, that they relied on the alleged misstatements and that said reliance was the proximate cause of their injuries.

Here, plaintiffs failed to articulate how their reliance on Mathys' alleged misrepresentation, made *after* the parties settled on the terms of the agreements, proximately caused their injuries. Plaintiffs were ready to close the deal before Mathys became angry, rebuked the deal, and then reconsidered and decided to close the transaction after all. It is wholly implausible that plaintiffs could have relied on Mathys' alleged misleading statements, since plaintiffs had already decided to sell the stock to Mathys according to terms already negotiated between the parties.

In short, this case is nothing more than a garden-variety breach of contract dispute, involving, but not "in connection with," the sale of a security.

## IV. CONCLUSION

The sole basis for federal jurisdiction over this matter is the securities fraud claim alleged in count one of the amended complaint. Count one, however, fails to meet the heightened pleading standards for securities fraud under section 10b of the Security and Exchange Act of 1934, Rule 10b–5 promulgated thereunder, and the Private Securities Litigation Reform Act of 1995. Accordingly, the Court will dismiss plaintiffs' amended complaint for lack of federal jurisdiction.

---

**15.** *See also Weiss v. Wittcoff*, 966 F.2d 109, 112 (2d Cir.1992) (misrepresentation that defendants would supply plaintiff with goods in the future was an "important inducement in persuading" plaintiff to sell his stock); *Sulkow v. Crosstown Apparel Inc.*, 807 F.2d 33, 34–35 (2d Cir.1986) (misrepresentations that, among other things, plaintiff would become a director and would draw a salary if he purchased stock in defendants' company directly induced plaintiff to purchase stock).